Amelia A. Wilks *vs.* Samuel Burns and others.

*Execution of a power—Specific performance of a Contract— Ambiguity—Contract to execute a Will—Power—Attempted execution by Will.*

There can be no execution of a power when the purpose for which it was created has been accomplished.

Where ambiguity exists as to the intention of the contracting parties that there should be an extinguishment of the power, in that event, the ambiguity in which that intention is involved presents an insuperable obstacle to the passage of a decree enforcing the execution of a contract under which the power was created.

When there is an application for specific performance, the proof of the intention of the contracting parties must be clear, and the contract certain in its terms, and free from all shade or color of ambiguity.

There can be no doubt of the legal right of one, having the exclusive ownership of property, to enter into a contract to execute a will in favor of the other contracting party. And if a will executed under these circumstances be subsequently cancelled, the aid of a Court of equity can be invoked.

But where the power of disposition by will is given to a person having no reversionary interest, an attempted execution of the power by a will made in conformity with the terms of an alleged contract, is invalid. The power is not thereby exhausted, and such will is revoked by a subsequent will duly admitted to probate.

Appeal from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before Miller, Yellott, Stone, Alvey, Irving, and Ritchie, J.

*Samuel Snowden,* for the appellant.

*John Gill, Jr.*, and *Bernard Carter*, for the appellees.

YELLOTT, J., delivered the opinion of the Court.

This appeal is from the decree of the Circuit Court of Baltimore City, granting the relief prayed for in a bill of complaint for specific performance, filed in that Court by the appellees in this cause against the appellant. From the record it appears that on the 15th day of April, 1858, James Wilks, Jr., of Baltimore City, executed his last will and testament, which was admitted to probate on the 3rd day of May in the same year. The testator devised and bequeathed the one-sixth part of his estate to trustees, to be held in trust for the use of his son James K. Wilks, during the term of his natural life, with power to his said son to dispose of the reversion by will. In the event of no such disposition being made, the property was to be held in trust, by the trustees named in the will, for the use of such persons as would be the heirs of the testator "to take in fee simple."

The son, becoming embarrassed by mortgages on his life estate, applied to his brother-in-law, Burns, to purchase said estate at sales for foreclosure of said mortgages; promising to secure him by a will made in execution of the power given him by the testator; which will was to be irrevocable. The property was purchased by Burns, who also obtained a policy of insurance on Wilks' life. Wilks executed what purports to be an irrevocable will, by which Burns was to hold the reversion in trust with power to sell the same immediately after the testator's death, and having, from the proceeds, fully indemnified himself for all losses and expenses incurred in assisting and relieving Wilks from his pecuniary embarrassments, to di-vide what remained among the children of said Burns.

Some time subsequent to these transactions the said James K. Wilks married, and not long afterwards, executed a will devising and bequeathing to his wife, Amelia

A. Wilks, the whole of the property disposed of in the will made in favor of Burns. Wilks' death occurred on the 29th of January, 1881, and soon after both of these papers, each purporting to be his will, were presented to the Orphans' Court of Baltimore City for probate. Anterior to the action of that Court, the appellee, Burns, endeavored by a bill for an injunction in the Circuit Court of Baltimore City, to prevent the appellant from proceeding further towards having the will in her favor admitted to probate. No injunction being issued, that will was admitted to probate. The Circuit Court afterwards decreed the enforcement of the alleged contract, and appointed a trustee to convey the property in controversy by a deed conforming' with the terms of the will made in favor of Burns. From that decree an appeal has been taken, and the cause thus brought into this Court for adjudication.

The Court below having decreed the specific performance of the contract, in order to properly determine the questions involved in controversy, it becomes necessary to ascertain, by an examination of its terms, in connection with the proof in the cause, whether the end and object which induced the parties to enter into that contract have not yet been attained, or whether, having been accomplished, the obligations imposed by its stipulations have ceased to be operative and cannot therefore be specifically enforced in a Court of equity. We have the written agreement, signed by Burns and James K. Wilks, in relation to the purchase by the former of the life estate of the latter. The paper, purporting to be an irrevocable will executed by said Wilks in favor of Burns, is also in the record; as well as the testimony of George M. Gill, who prepared both instruments, and narrates in detail the circumstances under which they were executed.

The written contract between Burns and Wilks makes no reference to the execution of a will by the latter.

After the recitals, referring to the purchase of the life estate and the expenditure of sums of money in aid of Wilks, there is a stipulation on the part 'of Burns for a reconveyance of the life estate, if during the life-time of Wilks, he, Burns, should be reimbursed. The proof discloses the fact that Burns has been fully reimbursed, and over-paid by the falling in of the life insurance. The testimony of George M. Gill indicates that Wilks intended the will as a security, to induce Burns to incur the risk of purchasing the life estate; promising, as the witness says, that he "would secure him by the will, which he was authorized to make under his father's will, that he would be reimbursed in case of his, Wilks' death," the balance to go to the children of Burns. From the language of the will, it is to be inferred, that its maker intended it to operate as an indemnification in the event of losses incurred by Burns, in relieving Wilks from his embarrassments. A trust is created giving Burns the power to sell and reimburse himself, with a residuary clause dividing the remaining proceeds among the children of Burns who may be living at the time of the death of the testator. It is probable that this residuary clause was inserted, because it became necessary to make some disposition of the entire proceeds in the event of a sale for the purpose of reimbursement; but Burns having been fully reimbursed, is there now any necessity for a sale? Can there be any legal sanction for the execution of a power, when the purpose for which it was created has been accomplished? Was it not the intention of the contracting parties, that there should be an extinguishment of the power in that event? It might be urged, 'that this intention is not clearly apparent, but merely inferential. This may be so, but the very ambiguity in which that intention is involved, presents an insuperable obstacle to the passage of a decree granting the relief invoked by the complainants in this cause. When there is an application for specific perform-

ance, the proof of the intention of the contracting parties must be clear, and the contract certain in its terms, and free from all shade or color of ambiguity.

In the case of *Mundorff and Wife vs. Kilbourn and Howard*, 4 *Md.*, 464, the Court, adopting the language of the Lord Chancellor, in *Walpole vs. Orford*, 3 *Ves.*, 402, said "that all agreements to be executed in equity must be certain and defined; equal and fair; and proved as the law requires; and that it was enough to doubt on any one of these points to refuse relief." In the case of *Semmes vs. Worthington, et al.*, 38 *Md.*, 318, this Court said:

"The proof must be clear and explicit, leaving no room for reasonable doubt. And in cases for the specific enforcement of a contract to devise, like the present, where the property has been devised to other parties, the utmost certainty is required, as, by the enforcement of the contract, the Court undertakes to set aside a solemn testamentary act of the deceased party, in the absence of all possible explanation of his conduct, and when he is no longer present to vindicate himself against the imputation of bad faith."

Another and a more important question is now presented for consideration, and upon its solution is dependent the determination of this controversy. Could James K. Wilks fetter and clog himself by the terms of a contract in the execution of the power given him by his father's will? The donor of the power intended that it should be executed by the will of the donee. The word "will" has a technical meaning, and implies an instrument executed in conformity with prescribed formalities, but subject to alteration or cancellation at the volition of the maker. It is his *will*, because his own mind, untrammelled and free, has determined to give the disposition of his property a certain designated direction. It does not take effect until his mental and physical powers have been destroyed by disease and dissolution, and while ever he has a dis-

posing mind it is under his control. This control over property until the last moment of life, is said by some elementary writers, to be derived from the sanction of the sovereign power; while others declare it to be a natural right existing "prior to all positive institutions and civilized refinements;" and one of the old English jurists, in his quaint phraseology, says that "Last Wills and Testaments, as to their Use, End and Substance, (though not as to the Solemnities thereof,) were known in the world long before Time had one gray Hair; indeed not long after the World came out of Nothing." *Godolphin's Orphans' Legacy,* 1.

The right to make a testamentary disposition of property being of such ancient origin, and existing coevally with the right to hold it, must have been exercised anterior to the ages when the knowledge of writing was acquired. Originally such disposition must have been by oral declarations, subsequently verified by the testimony of witnesses. As the intention of the testator might be influenced and changed by a mutation of circumstances, so could he make another declaration indicating the effect of the influences thus operating on his mind. This he could continue to do until the last moments of his existence. He could revoke his declared intention and alter his will, until the indication of his wishes had been rendered impossible by disease and dissolution. Although the policy of the law has long since prescribed certain solemnities, tending to produce more certainty in the authentication of last wills and testaments, there has never been any interference with the right of revocation. The untrammelled enjoyment of this right has never been inhibited by the sovereign power in the exercise of legislative control; and the testator's own declaration, in the body of the instrument, that it is not to be revoked, has no more effect than the usual formal phraseology that it is his last will and testament, which, literally interpreted, is tantamount to a solemn announce-

ment that no other will is to be executed by him at any future period. Notwithstanding this apparent intention the testator may, by alteration or cancellation, at some subsequent period, give an entirely different direction to the disposition of his property; the instrument being inchoate with respect to its operation. It is merely the evidence of the incipient intention of the testator, reduced to writing, and authenticated by prescribed formalities; to take effect after his death, but exclusively under his control during the whole period of his life. If this incipient intention in relation to the disposition of his property, should, at any subsequent period, undergo a change, having the exclusive control of the written evidence of what was once his intention, he can obliterate and destroy such evidence.

There can be no doubt of the legal right of one, having the exclusive ownership of property, to enter into a contract to execute a will in favor of the other contracting party ; but such transaction cannot be properly termed a testamentary disposition of property ; two or more contracting parties having concurred and bound themselves by reciprocal obligations, founded on good and valuable considerations. The testamentary document is nothing more than a part of the contract, which has been determined by mutual stipulations, controlling the mind of the testator.

If a will executed under these circumstances, is subsequently cancelled, the aid of a Court of equity can be invoked. But how does equity intervene? By an inquiry into the terms of the contract, which must be established by the adduction of proper and adequate evidence. If the proof fails, there can be no application of the remedy, and the cancelled will remains without vitality. If the proof is sufficient, the Court decrees a specific performance of the contract; the will being examined merely to ascertain the terms of such contract, of which it has become a part. The mode of enforcing a specific performance is

by the appointment of a trustee to execute a deed of conveyance of the estate.

It thus becomes apparent that the property is eventually disposed of by deed, and not by last will and testament, resulting from the voluntary act of the testator. This disposition by deed of conveyance can be properly made when the testator had an interest in the property which could be controlled by contract, and disposed of by deed as well as by last will and testament. But the question now to be determined is the legal right of the donee of a power, having no reversionary interest, and required to execute the power by last will and testament, to enter into a contract with reference to the execution of that power, and to proceed to execute it fettered and controlled by the supposed obligations of such contract. Did not the donor of the power, when he required its execution by last will and testament, intend that the mind of the donee should be untrammelled and free, so that he could, in the exercise of his judgment, be guided by changes of circumstances and contingencies likely to occur at any period antecedent to his death? And can a Court of equity now decree the specific enforcement of a contract, with reference to the execution of a power, when the contracting parties contemplated the extinguishment of the power several years anterior to the period when the donor intended it should be exhausted by an effective execution in the mode and manner designated by himself?

If, by the legal operation of the contract with Burns, the first will of James K. Wilks became irrevocable, there was a valid and effective execution of the power. The power was thus exhausted and extinguished several years antecedent to the period contemplated by the donor, who, requiring it to be executed by last will and testament, clearly intended that it should remain under the control of the donee until the testamentary disposition could take effect, or, in other words, until the death of the said

donee. If it could not be cancelled because of the controlling operation of the contract, then it was a will only with respect to its peculiar phraseology and the formalities observed in its execution; but in legal effect it was substantially a deed of conveyance; depriving the donee of the power of all future control over the reversionary interest in the property, which was thus disposed of in conformity with the terms of said contract.

The authorities are numerous and uniform in enunciating the principle that the donee cannot enlarge and amplify the scope of the power, but must be strictly controlled in its execution by the declared intention of the donor. *Farwell*, in his very able *Treatise on Powers*, says that,

"A power to be executed by will cannot be executed by deed, and equity will not relieve if the attempt is made. The creator of the power did not intend that it should be so executed; he intended it to be by will, or not at all; and it is impossible to hold that the execution of an instrument or deed, which, if it availed to any purpose, must avail to the destruction of that power the testator meant to remain capable of execution to the moment of the donee's death, can be considered in equity an attempt in or towards the execution of the power." *Farwell on Powers*, 264; *Reid vs. Shergold*, 10 *Ves.*, 370, 380.

In the case of *Thorley vs. Thorley*, 10 *East*, 438, Lord ELLENBOROUGH says:

"This question arises on the construction of a power: and if by construing it *liberally* be meant that the Court should give to the party more latitude in the execution of the power than the person who created it intended to give, I entirely disclaim any such authority. * * * * The devisor first gives to his wife an estate for her life, and then he says, that it shall be 'at her disposal afterwards, to *leave* to whomsoever she pleases.' In common under-

standing the word *leave* must be taken to apply to that sense of it in which a person making his will would naturally use it, namely by a testamentary disposition." To which BAYLEY, J., adds:

"This construction is confirmed by the consideration, that if the widow were confined to dispose of it by will, she would retain the power of disposition over it to the end of her life; but if she might dispose of it by deed, having once conveyed it away, she would be precluded from the exercise of any further disposing power for the remainder of her life. Then, if this be a power to dispose of the property only by will, that being different from a power to dispose of it by deed, the power was ill executed."

The multiplication of authorities is unnecessary. The Courts in England and in this country, without any conflict of opinion, have determined that when a power is to be executed by will the donor intended that it should remain under the control of the donee "to the moment of his death." It thus becomes apparent that the attempted execution of the power by a will made in conformity with the terms of an alleged contract with Burns, was without validity; the power was not exhausted; and that the first will executed by James K. Wilks was revoked by the subsequent will in favor of Amelia A. Wilks, which has been duly admitted to probate.

From what has been said it follows that the decree of the Court below must be reversed and the bill of complaint dismissed.

*Decree reversed, and*
*bill dismissed.*

(Decided 28th March, 1883.)


ALVEY, J., filed the following separate opinion:

I concur with the majority of the Court in the reversal of the decree appealed from, upon the evidence, being of

opinion that there is no clear, substantial equity shown, to entitle the appellee Burns, to specific execution of the contract; but I dissent from that portion of the opinion which holds that there can be no enforceable contract for the execution of the power by will in such case.