Spear, J.
Edward Harwood died testate October 15, 1875, and his will was probated shortly after. *8 That instrument gave one-third of his estate to his wife absolutely, the remaining two-thirds being disposed of for the benefit of his three daughters, Adaline C. French and the plaintiffs, Harriet C. Robbins and Gertrude Gordon, in equal shares. The wife deceased before the testator, and the third given her has been disposed of and does not enter into the present controversy. The estate consisted of an interest in a manufacturing firm in Cincinnati and of several parcels of real estate, its value being about $250,000. Maynard French, husband of Adaline C. French, named as executor by codicil, qualified October 20, 1875, and served until his death, November 9, 1882, when Thomas McDougall was appointed administrator de bonis non with the will annexed, and served until his decease July 18, 1899. Shortly thereafter the present administrator de bonis non, Amor Smith, Jr., was appointed.
The estate has been discreetly managed. During the twenty-five years prior to Mr. Smith’s appointment, there was paid from all sources to the three beneficiaries about $1,000,000. The portion denominated the remaining two-thirds consisted for many years of 5045 shares of the stock of a manufacturing corporation, The Grasselli Chemical Company, and two pieces of real estate. Mrs. French deceased in June, 1903. She left a will, and, pursuant to the provisions of that instrument, the present trustee has delivered to her executor one-third of the shares of stock and conveyed one-third interest in the real estate, leaving in the hands of the trustee the remaining two-thirds of the shares of stock and two-thirds interest in the real estate. The stock yields in dividends an annual income of $26,906.50, *9 or $13,453.25 for each of the plaintiffs. The plaintiffs are widows; they are now respectively seventy and fifty-nine years of age.
By the supplemental petition it is made to appear that each of the plaintiffs has entered into a written agreement with all of her children, by which, in consideration of irrevocably making a will in favor of the children, the interests of the children respectively were released to the mother, and by a supplemental petition in error it is shown that the said Adaline C. French deceased after the rendition of judgment by the circuit court; that she left a will by which she devised and bequeathed to her children (defendants in error herein) all of her estate; that these several defendants in error have joined in a written contract with the plaintiffs in error and their children, agreeing that the trust shall be terminated and that the trust estate be conveyed and distributed to the beneficiaries by absolute title, which is the prayer of the petition.
The paragraphs of the Harwood will which it is of importance to consider are as follows:
“First: I give, devise and bequeath to my dear wife, Julia Anne Harwood, the third part of all my estate of every kind, whether consisting of real estate, moneys, debts, merchandise, furniture, or of whatever other description and character said property may be.
“Second: The remaining two-thirds of my estate shall be equally apportioned amongst my children, but shall not be turned over to them, but shall be safely invested for their behoof; and the annual income arising to each child shall be subject to her control, whether married or unmarried, and in no *10 instance shall the husband of any such child have any power or control over the principal or interest of such share; nevertheless, each of my children shall have full power and authority to will and devise her portion of said inheritance in such manner as she shall see fit.
“Third: In case of either of my children dying without leaving a will, then her portion of said inheritance shall be equally divided between her children who may survive her, or if she have no children surviving her, then the said portion shall be paid to my children who may survive her, share and share alike.
“Fourth: I do hereby appoint my said wife, Julia Anne Harwood, executrix of this my last will and testament, so long as she shall remain unmarried.
uFifth: I do hereby appoint “William Henry Brisbane, of Arena, Wisconsin, and Frederick Dallas, of Cincinnati, to be the advisors of my said wife, hereby requiring her to obtain théir consent and co-operation as to the general managément of my estate.
“Sixth: In the event of the marriage or death or refusal or disability of my said wife to act as executrix, I hereby appoint the said .William Henry Brisbane executor of this my last will and testament; and in the event of the death or refusal to act of the said William Henry Brisbane, I do hereby appoint the said Frederick Dallas executor of this my last will and testament.”
When these provisions of the will have been properly construed the principal bone of contention will have been removed. Plaintiffs in error claim that, *11 •under these provisions the interest of each daughter in the property was absolute, coupled, however, with a marital trust, which ended when she became dis-covert. In other words, that the trust was for the purpose only of preventing the husbands of these ladies from having any power or control over the wife’s interest in the property, and the husbands being now deceased, the object of the trust has been subserved, and, the necessity for its continuance no longer existing, it should be declared terminated. They claim, further, that the agreements entered into between Mrs. Robbins and her children and Mrs. Gordon and her children, and the execution of their wills in favor of their children respectively, is a substantial carrying out of the purposes of the Harwood will, and was a proper exercise of the power to will, and the contracts effectively vested the absolute interest in those ladies in their respective shares, subject only to the devolution provided for in said wills. And, third, that the contract entered into between all parties in interest set up in the supplemental petition in error, was a complete settlement of all matters involved and a complete release of all ulterior and collateral interests, so that in each of the three daughters of Edward Harwood and their families an undivided one-third interest in the original two-thirds mentioned in the will became vested absolutely, and that it leaves no interest outside of the mere naked interest of the trustee to he dealt with, and authorizes the entry of a decree by this court declaring the trust terminated and ordering distribution.
If we were able to agree with the learned counsel respecting the meaning and purpose .of the Har *12 wood will we could easily agree with their conclusion as to the effect of such construction upon the rights of their clients and as to the consequent duty of this court in dealing with the judgment below. We have not, however, been able to so agree with respect to the proper construction of the will, but find ourselves in accord with the holding of the circuit court.
It has not been found of late years profitable to frequently report eases involving the construction of wills, the general fact being that scarcely any two instruments’ of that character present the precise question in dispute; and, although the extended and very learned arguments of counsel, as well as the amount of the interests involved, somewhat tempt to extended discussion upon the various rules of law believed by counsel to be involved in the inquiry, yet it seems to us that there is presented no new or difficult question of law, but that the issue is controlled by the application of simple, well-established rules, and hence we feel that the duty of the court will be sufficiently performed by a brief statement of conclusions, and that neither an attempt at elaborate argument in their support, or an extended citation of authorities, is necessary. Besides, the case has been reported by the circuit court in a wéll-reasoned opinion by Jelke, J. (5 C. C. R., N. S., 545, and 27 O. C. C., 91), wherein the learned judge sustains his conclusions by abundant authorities.
The will bears earmarks showing that it was not drawn by a lawyer, but by a layman, and therefore the propriety, in our effort to arrive at the intent of the testator, of giving to the words and phrases used their popular rather than their technical meaning, if there be any difference, becomes apparent. The *13 first phrase which attracts attention as needing special consideration is the opening sentence of the second item: “The remaining two-thirds of my estate shall he equally apportioned amongst my children.” Apportion: to divide and assign in just proportions; to divide and distribute proportionately; to portion out. That is, whatever the three children were to receive they were to have in equal proportions. Naturally the next inquiry is, what were they to receive? The answer is given by the language which immediately follows, viz.: “but shall not be turned over to them, but shall be safely invested for their behoof.” That is, for their advantage, profit, benefit, interest, use. Expressive of the same idea and purpose is the language following: “and the annual income arising to each child shall be subject to her control, whether married or unmarried. ” It is the ‘ ‘ annual income ’ ’ which is to be subject to her control, not the corpus of the property, and this without respect to her condition as to coverture. The provision implies some knowledge respecting, and a recognition, of, the old rule of the control by the husband over the wife’s property, and a purpose to prevent the application of that rule to the property the beneficial use of which had been given to these daughters, and this idea is further emphasized by that which follows, viz.: “and in no instance shall the husband of any such child have any power or control over the principal or interest of such share.” It seems too clear for sober argument that down to this last phrase there is absolutely no operative sentence giving, or indicating a purpose to give, an absolute estate as to the principal. But it is argued that *14 the inhibition against control by the husband over the principal points unmistakably to the conclusion that each daughter was to have control over the principal which on decease of the husband would be absolute. We think not. The provision following is significant. It is: “nevertheless, each of my children shall have full power and authority to will and devise her portion of said inheritance in such manner as she shall see fit,” a provision seemingly useless and without apparent legal effect as to either” daughter in case she .should survive her husband provided the will is construed as giving to the wife absolute control of the corpus on decease of her husband, since absolute title itself implies power to will. We do not overlook the expression “her portion of said inheritance,” which occurs twice. At first blush it might seem like a contradiction of the idea of a life estate. But this is not necessarily so. If the phrase will bear a construction consistent with the plain import of that which precedes, then, .under the rule that all parts must be given effect if practicable, we are required to give the term “her portion of said inheritance” such construction as will reconcile it with the idea of a life estate in the portion in which she has the beneficial interest. Such construction seems not unreasonable. Indeed, using the language in the popular sense, such would be her portion. It would not necessarily imply or embrace the idea of an absolute estate in the portion, but would be her portion because it is the part from which she as the beneficiary is to receive her annual income, and the part over which, by special provision of the will, she is given control to the extent of disposing of it *15 by will. With this construction all appearance of inconsistency with the idea of a life estate, as it seems to us, disappears. Then follows the third item providing that in case of either of the children dying without leaving a will, then “her portion of said inheritance” to be equally divided between her children who may survive her, and failing such children, then to be paid to the children of the testator who may survive her, i. e., the surviving daughter or daughters. That language is surely not equivocal. It is a clearly expressed remainder over, and carries the further implication that the precedent estate in the daughter was less than an absolute estate.
The apparent meaning of the entire provision is, we think, to inhibit any control whatever by the husbands, either of interest or principal, but to clothe the wives with absolute control of the interest, that is the income, and a qualified control of the principal, the corpus, viz.: to dispose of the same by will, an instrument which, however, would take effect only at their decease.
It is, however, contended that this third item is repugnant to the provisions of the second item, and must, therefore, be totally disregarded. With due respect, this is begging the question. It is only upon the theory that the second item creates an absolute estate in the three daughters, modified only by the alleged marital trust, that there can be any claim of repugnancy. But it is not upon uncertain language in the first provision that repugnancy can be predicated. The intent to create an absolute estate must be beyond serious question before a subsequent item, if it clearly creates a remainder, *16 can be alleged to be repugnant. If the first item is doubtful in meaning tbe later item should be held to remove the doubt, not to confirm it, or be disregarded wholly. The meaning of the third item is clear beyond question. It creates a remainder, and, it has already been shown, we think, that at least there was not, by the preceding item, a clearly expressed intent to create an absolute estate.
But the proposition that this will creates a marital trust which ended with each daughter when she became discovert is subject to another answer which seems conclusive. It assumes that the marital relation, if terminated as to coverture with one husband by his decease cannot possibly be renewed by a second marriage. However improbable that event may appear as a matter of fact there surely can be no legal presumption to that effect. The term “the husband” cannot be confined in its application to the husband then living, but, in order to carry out the clear purpose of the testator, as shown by the whole will, must be held to apply to any husband. This purpose is made especially apparent by the appointment by the testator of the husband of one of the daughters as executor. That act imports great confidence in that husband and of itself affords a strong presumption that the exclusion of the then living husbands from control was not personal to them. So long, then, as the possibility of coverture remains (and why does it not remain during natural life?) it cannot be said that the trust ended as to each daughter when she became discovert.
The real question at the bottom of the inquiry so far as the claim of repugnancy is concerned is akin *17 to that presented in Baxter v. Bowyer, 19 Ohio St., 490, and in Johnson v. Johnson, 51 Ohio St., 446. Those cases establish the rule that conflicting provisions of a will should be reconciled so as to conform to the manifest general intent, and it is only in cases where such provisions are wholly and absolutely repugnant that either should be rejected. And where, by one clause in a will, property is devised or bequeathed, by words prima 'facie importing an absolute estate, and by subsequent clause is given in remainder to another person, the first devisee or legatee takes only a life estate, and the limitation over is valid. Giving effect to this principle the general intent and paramount purpose of the will can be easily carried out. The principle here declared is abundantly sustained by Smith v. Bell, 6 Pet., 68, and a long line of adjudications since.
To the contention that these ladies having executed wills in favor of those entitled to the remainder in case of failure of the parents to execute the power to will, the purpose of the testator is fully accomplished and the trust should be terminated, we think a sufficient answer is found in the rule that the power to make a will is a power to be exercised freely, so that the power to execute implies . a power to revoke. 1 Sugden on Powers, *262. As well stated in Wilks v. Burns, 60 Md., 64: “The word ‘will* has a technical meaning, and implies an instrument executed-in conformity with prescribed formalities, but subject to alteration or cancellation at the volition of the maker. It is his will because his own mind, untrammeled and free, has determined to give the *18 disposition of Ms property a certain designated direction. It does not take effect until Ms mental and physical powers have been destroyed by disuse and dissolution, and while he has a disposing mind it is under his control.” By virtue of this principle of law, therefore, the contract between the plaintiffs and their children, and the provision in the wills, if there be such, that they are irrevocable, can have no effect upon the controversy here. This disposes of the claim based upon the supplemental petition. That made by the supplemental petition in error can have no firmer foundation. It is met, also, by the further answer that it is an appeal to this court to exercise original jurisdiction; to hear and determine for the first time facts touching the merits of the original cause, and that, too, because of the happening of events since the decree of the circuit court with which the trustee has had nothing whatever to do.
It is not doubted that where one has such exclusive ownership of property as to imply an unqualified power of disposition by will he can make a contract upon a valid consideration to execute a will in favor of the other contracting party, and, upon failure to so execute, his estate may be made liable, but where the authority of disposition by will is a mere power given to one having no reversionary interest, an attempted execution of the power by will made in conformity with the terms of an alleged contract, is invalid. Wilks v. Burns, supra. Nor is it doubted that although á trust may not have ceased by operation of time, and although some of its subordinate purposes may not have been accomplished, yet if the paramount purposes have all been accomplished *19 and all the parties who are or may he interested in the trust property are in existence, and sui juris, and consent to the termination of the trust, a court of equity may decree it terminated, for a trust will not be continued merely for the benefit of the trustee, and where the provisions named in the trust which are inconsistent with the full beneficial ownership of the cestui are fulfilled, the cestui having the absolute equitable ownership, he is entitled, as he is also where it has become impossible to carry out the trust, to have the trust terminated. But where the paramount purposes have not all been subserved, or in provisions by will where there are cross-remainders or contingent interests which cannot be determined and adjusted until the happening of certain events, the trust cannot be terminated; nor can it be determined by consent while it is- still uncertain who will take under the bequest relating to final distribution. 2 Perry on Trusts, sec. 920. It has been held in Massachusetts (Sise v. Willard, 164 Mass., 48), that “a bill in equity to compel an absolute transfer to the plaintiff of a fund held for him by the trustee under a will cannot be maintained if his interest in the fund is only a life interest coupled with a power of testamentary disposition.” It has also been held by the same court (Young v. Snow, 167 Mass., 287), that “although the interests created by will under a trust have all vested and all the parties interested request that the trust be terminated, and the trustee consents, the termination will not be decreed if none of the provisions are repugnant to law or contrary to public policy, and the objects and purposes of the trust have not been accomplished, and their accomplishment has not been made impossible. ’ ’ See, also, *20 Hill on Trustees, *239; O’Kill v. Campbell, 3 Greene’s Ch., 13; Kent v. Armstrong, 6 N. J. Ch., 559; Cantine v. Brown, 46 N. J. Law, 599; Gunn v. Brown, 63 Md., 96; Kendall v. Gleason, 152 Mass., 457.
> We are of the opinion that this will, taken as a whole, places the legal title in the executor, or in his successor in the trust, for the purposes of the trust; the life estate being in the daughters with power to finally dispose of the corpus by will, and failing that, an absolute estate, whether called an executory devise or contingent remainder does not matter, in the living children. We think that, giving effect to the manifest intent of the testator, the will does not create a marital trust to be ended in the event of discoverture, but that it does create a trust to be administered for the behoof of the plaintiffs during life as to each, subject, however, to the power to dispose of the same by an instrument taking effect -at the decease of the maker, and that the trust as to either was not terminated by the decease of the husband.
This view is strengthened by the consideration that for twenty-five years a like interpretation was given the will by those- dealing with the estate including lawyers of acknowledged learning and ability, and by paragraphs five and six of the will, by which it is plainly manifest that the testator contemplated that the estate would continue in administration much longer than is usual even with estates of this magnitude.
Running through the instrument there appears a clearly expressed purpose to make such provision for these daughters as would insure, as far as human de *21 vice can insure, a permanent and certain income during their lives, freed from the risks and vicissitudes incident to the management of valuable property by ladies who, it is reasonable to assume, were unaccustomed to such responsibility, and who might be subject to the importunities of self-seekers and designing persons. It is enough to say that this purpose was a lawful one, and that it is not the duty of courts to defeat it, but to respect and enforce it.
Judgment affirmed.
Shauck, Price, Crew and Summers, JJ., concur.