HILDA MAE MOATS ET AL. *v.* JACQUELINE
SCHOCH & MARY ANN BERRY, PERSONAL
REPRESENTATIVES OF THE ESTATE OF
LILLIE W. PUMPHREY

[No. 392, September Term, 1974.]

*Decided February 13, 1975.*

The cause was argued before ORTH, C. J., and MORTON and GILBERT, JJ.

*Steny H. Hoyer* for appellants.

*Richard J. Clark* and *Edward S. Digges* for appellees.

ORTH, C. J., delivered the opinion of the Court.

The issue to be decided on this appeal is whether the Circuit Court for Charles County was correct in ordering on 21 May 1974 that a writing executed 19 November 1957 by Lillie W. Pumphrey, sometimes known as Lily W. Pumphrey, be admitted to probate as her last will and testament. We find that the court was correct and affirm its judgment.

I

The case comes to us on appeal by Hilda Mae Moats and Frances Geneva Bell (daughters) from the order issued 21 May 1974 by the Circuit Court for Charles County. It reached that court on appeal from an order issued 5 October 1973 by the Orphans' Court for Charles County whereby the Court admitted the 1957 writing to probate as the last will and testament of Lillie and appointed Jacqueline Schoch and Mary Ann Berry (granddaughters) the personal representatives of the estate.[1] The facts are not in dispute.

---

1. The Court of Special Appeals of Maryland has exclusive appellate jurisdiction over any appeal from an appealable judgment in any case over which an orphans' court has original jurisdiction. Courts Art. § 12-308 (a) (15). We observed in *Jennings v. Jennings*, 20 Md. App. 369, n. 4 at 371, *cert. den.*:

"Under the present status of the law, except for Montgomery County, there may be an initial appeal from a final order of an orphans' court either to the Court of Special Appeals, Courts Art. § 12-501, or to the circuit court for the county (or to the Superior Court of Baltimore City), Courts Art. § 12-502(a). If a party first appeals to the circuit court (or in Baltimore City to the Superior Court of Baltimore City), under § 12-502(a), a further appeal by a party from the final order of that court, acting in an appellate capacity, is authorized to the Court of Special Appeals under § 12-301. This was expressly set out in the former law. Code, Art. 5,

On 22 May 1942 William B. Pumphrey and Lily W. Pumphrey executed a writing styled their "Joint and Several WILL." [2] William died 1 November 1949. Lily filed for

§ 9, authorized appeals from a final judgment of an orphans' court to the Court of Appeals. Code, Art. 5, § 5 c (b) (15) gave the Court of Special Appeals exclusive initial appellate jurisdiction in any case over which an orphans' court has original jurisdiction. Code, Art. 5, § 25, provided that, except in Montgomery County, instead of a direct appeal to the Court of Appeals pursuant to § 9, a party could appeal to the circuit court for a county or the Superior Court of Baltimore City, where the appeal shall be heard *de novo*. Section 25 continued: 'From the final judgment or determination of said circuit court or superior court there shall be a further right of appeal to the Court of Appeals pursuant to the provisions of § 1 of this article.' Section 1, as amended, provided for appeal to the Court of Appeals, unless the suit or action or prosecution is subject to the appellate jurisdiction of the Court of Special Appeals, in which event any party may appeal to the Court of Special Appeals from such judgment or determination (except as to appeals heard by 'a court of law' from a judgment of the District Court).

The code revisions which now appear as Courts Art. §§ 12-501 and 12-502 (a) made only stylistic changes. Although the express provision for further right of appeal to the Court of Special Appeals does not appear in the statutes as revised, the substance of the former law was not intended to be changed. The revisor's note to Courts Art. § 12-502 (a) says: 'This subsection is the substance of Article 5, § 25, giving effect to recent legislation regarding appellate jurisdiction.' This intention is effectuated by the 'appeal from final judgment' language of § 12-301, combined with the fact that § 12-302 does not except from § 12-301 the type of case here under consideration."

2. The will was couched in terms of the two parties acting jointly — "We ... hereby make, publish and declare this to be our Joint and Several Last Will and Testament. . . ."; "After the payment of all our just debts and funeral expenses and costs of administration . . ."; "We give and bequeath . . . ."; "We jointly and severally and individually bequeath and devise, after the death of both of us, the survivor having had a life interest therein . . . ."; "We nominate, constitute and appoint our daughters, Frances Geneva Pumphrey, and Lillie Belle Pumphrey, executors of this our Joint and Several Last Will and Testament." There were separate attestation clauses. In one, two witnesses attested that William signed, sealed, published and declared in writing as his Last Will and Testament in their presence and in the presence of Lily, and that they subscribed their names as witnesses at William's request, in his presence and in the presence of each other. In the other, the same two witnesses attested that Lily signed, sealed, published and declared the writing as her Last Will and Testament in their presence and in the presence of William and that they subscribed their names as witnesses at Lily's request, in her presence and in the presence of each other.

The legatees and devisees under the will were three daughters of William and Lily — Frances Geneva Pumphrey, now Bell; Lillie Belle Pumphrey, later Dries, now Bastian; Hilda Mae Pumphrey, later Sanford, now Moats.

Frances Geneva Bell and Hilda Mae Moats are parties to the appeal before us. Lillie Belle Bastian moved this Court on 22 November 1974 to permit her to intervene as a party to the appeal. We denied the motion 12 December. See Maryland Rule 1012 b.

letters of administration and offered the 1942 will for probate. It was admitted to probate by the Orphans' Court for Charles County in June of 1950. There is indication that it was subsequently probated also in an ancillary proceeding in the District of Columbia. What property passed under the will and to whom are not reflected in the record before us.

On 19 November 1957, Lily, under the name "Lillie W. Pumphrey", executed another writing entitled her "LAST WILL AND TESTAMENT" by which she revoked "all other Wills by me heretofore made." [3]

Lily W. Pumphrey died on 1 September 1973. On 6 September, granddaughters filed a "Petition for Probate" with the Register of Wills for Charles County asking that they be granted letters of administration and that the 1957 will be admitted to judicial probate.[4] On 28 September daughters filed opposition to the appointment of granddaughters as personal representatives. Among the reasons stated were that by the joint and mutual will of 1942 and "the contractual obligations arising thereunder", the testatrix's property rightfully belonged to her three living children and that any will subsequently executed was "totally invalid." They suggested that Thomas C. Carrico be appointed personal representative. The minutes of the Orphans' Court reflect that a special session was held on 5 October to consider the petition for judicial probate and the opposition to the appointment of appellees as personal

---

**3.** The 1957 will gave "the sum of One Dollar" to each of the testatrix's three daughters. The rest and residue of her estate was bequeathed and devised to two of her grandchildren, Jacqueline Dries (now Schoch) and Mary Ann Dries (now Berry), share and share alike, absolutely. There were provisions for the sale of certain personal property, the proceeds to be delivered to the two grandchildren if they were of age, otherwise, to be deposited in a bank until they obtained legal age. She provided for her burial with meticulosity, to the point of designating by name two hymns "to be played on a pipe organ in the funeral home" and directing that one Gus Keys dig her grave for which he was to be paid "the sum of $25.00 for his labor." She appointed Rudolf A. Carrico to be the Executor and excused him from giving bond.

**4.** The petitioners claimed to be entitled to letters because the "Executor named in the will is deceased and they are the residuary legatees." The petition estimated the value of the estate to be $100,000.00 and the debts to be $25,000.00. They listed as "all persons interested in the estate" the three daughters of the testatrix and themselves.

representatives. The court ruled to proceed on the petition to appoint appellees and did so. The minutes read:

> "No testimony was given to prove that Mrs. Pumphrey profited from her husband's death. She paid all his bills according to Court records and proceeded to accumulate an estate which the Court feels she could rightfully dispose of. For that reason we accept the 1957 will as her Last Will and Testament and we appoint the two legatees as personal representatives in accordance with the Maryland law [Estates & Trust Art. § 5-104 (3)]."

The court issued an order dated 5 October appointing granddaughters personal representatives of the estate and admitting the 1957 writing to probate as the will of the decedent.

On 17 October daughters noted an appeal from the order of 5 October to the Circuit Court for Charles County. See note 1 *supra*. See also *Pattison v. Firor*, 146 Md. 243; *Wright v. Nugent, Personal Representative*, 23 Md. App. 337. The case was docketed in that court as Law No. 7604.

On 15 November daughters moved to consolidate the case with a case filed in that court entitled "Hilda Mae Moats, et al. v. The Estate of Lily W. Pumphrey, deceased, et al.", Equity No. 3343. The motion averred that Equity No. 3343 was "concerned with enforcement of certain provisions of the said 1942 will by means of equitable relief of specific performance and also involves construction of the terms of said will, as well as requests for other equitable relief, all pertaining to the issues in controversy from the handling of the Estate of Lily W. Pumphrey, deceased." The motion also prayed that the hearing on Law No. 7604 be continued until Equity No. 3343 came on for trial. The motion was opposed by granddaughters and denied by order of the court issued 7 December.[5] On 7 December the appeal from the Orphans'

---

5. When the case came before us on appeal, daughters moved to have further appellate proceedings stayed pending the outcome of Equity 3343 below. Upon hearing we denied the motion by order of 9 September 1974.

Court was heard *de novo* and on 21 May 1974 the court gave judgment according to its determination of the equity of the matter. Courts Art. § 12-502 (a). It ordered that "the paper writing of Lily W. Pumphrey dated the 19th day of November, 1957, be and the same is hereby admitted to probate as the Last Will and Testament of Lily W. Pumphrey." On 10 June daughters noted an appeal therefrom to this Court.

## II

Daughters would have us decide the issue of the propriety of the order of 21 May 1974 in the frame of reference of this question which they present:

"Is a Joint and Mutual Will, contractual in nature, *irrevocable* and therefore entitled to probate to the exclusion of later purported testamentary documents, where said Will was not revoked prior to the death of one of the parties thereto and the survivor caused said Will to be probated as the Will of the deceased party and accepted benefits thereunder?"

We accept on the record before us that the will of 1942 was not revoked prior to the death of William B. Pumphrey, one of the parties thereto, and that the surviving party, Lily W. Pumphrey, caused the will to be probated. We assume for the purpose of decision, but expressly do not decide, that it was a joint and mutual will,[6] contractual in nature, and that

---

**6.** The courts have not been discriminate in defining the terms "joint", "mutual", and "reciprocal" wills. We think the best definitions are those found in Vaughn, "The Joint and Mutual Will", 16 Bay. L.R. 167 (1964):

"A joint will is a single testamentary instrument which contains the wills of two or more persons, is executed jointly by them, and disposes of property owned jointly, in common, or severally by them. A mutual will is one executed pursuant to an agreement between two or more persons to dispose of their property in a particular manner, each in consideration of the other. If the testators name each other as beneficiaries, the wills are reciprocal. Two or more wills may be mutual without being joint. A joint and mutual will must be the will of two or more persons contained in a single testamentary instrument, jointly executed by them

Lily W. Pumphrey accepted benefits thereunder. In other words, we are assuming *arguendo*, for the determination of this appeal only, that the will of 1942 was a joint, mutual, reciprocal will binding William and Lily to dispose of their property in the manner therein set out, each in consideration of the other, and that there was a contract between them that the will would remain in effect. Even on these assumptions, which accept the premises in the question as presented by daughters, the answer to the question is no, the will of 1942 is not irrevocable. The authorities are not entirely uniform on the point, but Annot. 169 A.L.R. 9, 24, states a rule which it characterizes as in accordance with sound theory:

> "[O]ne of two testators who have made wills which are reciprocal in the circumstance that each will makes provision for the testator of the other will may revoke his will even after the death of the other testator, notwithstanding the wills were drawn and executed pursuant to a contract." (footnotes omitted)

The annotation explains the effect of such revocation, at 24-25:

> "This does not mean that the obligation of the contract is escaped by revoking the will. It means that on the issue of will or no will with which the probate court is concerned a will is to be regarded as revocable notwithstanding it was executed pursuant to contract. The question whether a revocation constitutes a breach of contract for which relief may be had in law or in equity is of no concern, strictly speaking, to a probate court.

---

pursuant to an agreement to dispose of their respective estates to each other or to third parties. Although the initial execution of the will may categorize it as joint and mutual; nevertheless, it cannot be given effect as such while one party survives, but, as to him, it will be given effect as his separate will." (footnotes omitted)

*See* Annot., 169 A.L.R. 9, 12-14 (1947); G. Thompson, *Wills*, § 34 (3rd ed. 1947); 57 Am. Jur. *Wills*, § 681.

Therefore a later will which revokes a prior will which was jointly executed, or one of two separate wills containing reciprocal bequests, is admissible to probate, though the testator violated his contract by executing it; and a jointly executed will or one of two separate wills which are reciprocal in their provisions is not admissible to probate as the will of one of the testators who revoked it, notwithstanding the revocation was a breach of contract. Concisely stated, it is the contract and not the joint will which is irrevocable." (footnotes omitted)

Vaughn, *supra*, note 6 hereof, reached the same conclusion. After rejecting the theory of irrevocability, he said, at 170:

"The last theory, and, in the writer's opinion, the only tenable one at this time is that of contract. It can be stated as follows: The joint and mutual will is based on a contract between the parties. While the will itself is wholly revocable at any time, the underlying contract will be enforced. * * * *Shawver v. Parks* [239 S.W.2d 188] clears up many questions about this creature — partly will and partly contract. According to it, the true rule is that the will is a testamentary instrument, ambulatory and revocable, and it cannot be made irrevocable. Even though the testamentary portions are revocable, the contract portions are irrevocable. Therefore, the underlying compact is enforceable — or in a loose sense irrevocable — notwithstanding the revocability of the will."

We believe this to be the majority view in other jurisdictions. *See Tutunjian, et al. v. Vetzigian, et al.*, 299 N. Y. 315, 87 N.E.2d 275 (1949). It is also in accord with the decisions of this State.

It was early recognized in this jurisdiction that "Wills are ambulatory; they can operate only after the death of the party; and are liable to be changed at any time." *Mundorff v.*

*Kilbourn,* 4 Md. 459, 464. In *Ottaviano v. Lorenzo,* 169 Md. 51, 63, the Court said: "A testamentary paper is in nature ambulatory until the death of the maker, and, so, is generally revocable at pleasure, and becomes operative only at its executant's death." See *Cowman v. Classen,* 156 Md. 428, 442; *Alexander v. Worthington,* 5 Md. 471, 480; 2 Blackstone, *Commentaries* \*502. In *Wilks v. Burns,* 60 Md. 64, the Court of Appeals had the question, at 68 whether a person could "fetter and clog himself by the terms of a contract in the execution of the power given him by his father's will", the donor of the power intending that it should be executed by the will of the donee. It said, at 68-70:

"The word 'will' has a technical meaning, and implies an instrument executed in conformity with prescribed formalities, but subject to alteration or cancellation at the volition of the maker. It is his *will,* because his own mind, untrammeled and free, has determined to give the disposition of his property a certain designated direction. It does not take effect until his mental and physical powers have been destroyed by disease and dissolution, and while ever he has a disposing mind it is under his control. This control over property until the last moment of life, is said by some elementary writers, to be derived from the sanction of the sovereign power; while others declare it to be a natural right existing 'prior to all positive institutions and civilized refinements; and one of the old English jurists, in his quaint phraseology, says that 'Last Wills and Testaments, as to their Use, End and Substance, (though not as to the Solemnities thereof,) were known in the world long before Time had one gray Hair; indeed not long after the World came out of Nothing.' Godolphin's Orphans' Legacy, I.

The right to make a testamentary disposition of property being of such ancient origin, and existing coevally with the right to hold it, must have been

exercised anterior to the ages when the knowledge of writing was acquired. Originally such disposition must have been by oral declarations, subsequently verified by the testimony of witnesses. As the intention of the testator might be influenced and changed by a mutation of circumstances, so could he make another declaration indicating the effect of the influences thus operating on his mind. This he could continue to do until the last moments of his existence. He could revoke his declared intention and alter his will, until the indication of his wishes had been rendered impossible by disease and dissolution. Although the policy of the law has long since prescribed certain solemnities, tending to produce more certainty in the authentication of last wills and testaments, there has never been any interference with the right of revocation. The untrammeled enjoyment of this right has never been inhibited by the sovereign power in the exercise of legislative control; and the testator's own declaration, in the body of the instrument, that it is not to be revoked, has no more effect than the usual formal phraseology that it is his last will and testament, which, literally interpreted, is tantamount to a solemn announcement that no other will is to be executed by him at any future period. Notwithstanding this apparent intention the testator may, by alteration or cancellation, at some subsequent period, give an entirely different direction to the disposition of his property; the instrument being inchoate with respect to its operation. It is merely the evidence of the incipient intention of the testator, reduced to writing, and authenticated by prescribed formalities; to take effect after his death but exclusively under his control during the whole period of his life. If this incipient intention in relation to the disposition of his property, should, at any subsequent period, undergo a change, having the exclusive control of

the written evidence of which was once his intention, he can obliterate and destroy such evidence."

In *O'Hara v. O'Hara*, 185 Md. 321, the Court, again holding that the donee of a general power of appointment by will has no right to enter into a contract that fetters such power, summarized, at 325, what it said in *Wilks*:

"As this Court stated in *Wilks v. Burns*, 60 Md. 64, 69, the declaration of a testator that his will shall be 'irrevocable' has no more effect than a declaration that his will is his 'last will and testament.' These words literally mean that he does not intend to execute another will. And yet it is beyond question that he has the legal right to make a different disposition of his property at any time. A will is evidence of the testator's incipient intention, authenticated in accordance with the requirements of the law, to take effect after his death, but remaining under his control during the entire period of his life. The testator can revoke his declared intention and alter his will as long as he possesses testamentary capacity. The untrammeled right to revoke a will has never been abridged by the State."

It is clear, therefore, that there is no restriction on the *right* of a person with the capacity to make a will to revoke it.[7]

It is also clear that a will may be drawn and executed pursuant to a contract, the meaning of which is that the will shall not be revoked. The Court of Appeals said in *Wilks v. Burns, supra,* at 70:

---

7. How a will may be revoked is circumscribed by legislative enactment. Estates & Trusts Art. § 4-105. The section formerly appeared as Code, Art. 93, § 4-105. Changes were made only in style and language. Art. 93, § 4-105 adopted, without change of substance, former § 351 of Art. 93. Estates & Trusts Art. § 4-105 declares that "A will, or any part of it, may not be revoked in a manner other than as provided in this section." *See Syfer v. Dolby,* 182 Md. 139; *Hunter v. Baker,* 154 Md. 307. Subsection (a) includes as a manner of revocation: "By provision in a subsequent, validly executed will which (1) revokes any prior will or part of it . . . expressly . . . ." As we have indicated, the 1957 will executed by Lillie W. Pumphrey expressly revoked "all other Wills by me heretofore made."

> "There can be no doubt of the legal right of one, having the exclusive ownership of property, to enter into a contract to execute a will in favor of the other contracting party; but such transaction cannot be properly termed a testamentary disposition of property; two or more contracting parties having concurred and bound themselves by reciprocal obligations, founded on good and valuable considerations. The testamentary document is nothing more than a part of the contract, which has been determined by mutual stipulations, controlling the mind of the testator."

The Court, at 70-71, explained what redress could be had if a will so executed were revoked:

> "If a will executed under these circumstances, is subsequently cancelled, the aid of a court of equity can be invoked. But how does equity intervene? By an inquiry into the terms of the contract, which must be established by the adduction of proper and adequate evidence. If the proof fails, there can be no application of the remedy, and the cancelled will remains without vitality. If the proof is sufficient, the court decrees a specific performance of the contract; the will being examined merely to ascertain the terms of such contract, of which it has become a part. The mode of enforcing a specific performance is by the appointment of a trustee to execute a deed of conveyance of the estate."

In *White v. Winchester*, 124 Md. 518, the holding was that a valid contract, based upon sufficient consideration, that a will of one of the parties will not be changed, may be specifically enforced, as well as a contract to make a will according to agreement. The Court found it obvious in *Hughes v. McDaniel*, 202 Md. 626, 635 "that when parties enter into a contract by which one of them agrees to execute a will in favor of the other for sufficient consideration, and thus the parties bind themselves by reciprocal obligations, the will made in pursuance of the contract is an integral part

of the contract." Thus, it concluded, if the agreement for the execution of the will were void, the will must also be declared void. In *Scott v. Marden*, 153 Md. 1, writings testamentary in form and ambulatory in effect, by which the decedent undertook to bequeath to another, in consideration of services rendered by the other, certain property, were held to be enforceable as contracts in a court of equity as against persons to whom the decedent subsequently conveyed the property. Such a contract to execute a will, of which the testamentary document so executed becomes a part, "is enforceable against heirs, devisees or representatives just as though the deceased obligor were a party to the suit, by treating the heirs as trustees and compelling them to convey the property in accordance with the terms of the contract." *Wilson v. Safe Dep. & Tr. Co.*, 183 Md. 245, 252. In accord is *Mannix v. Baumgardner*, 184 Md. 600. *See Hamilton v. Thirston*, 93 Md. 213.

We think it patent that Maryland follows the great weight of modern authority that "an instrument is not to be denied probate as a will for the reasons that it was executed by two or more persons purporting to sign as testators, contains bequests which are reciprocal, and was executed pursuant to a contract, provided the instrument is not dependent upon the death of the survivor for effectiveness as the will of the first to die, but can be admitted to probate successively upon the death of each testator as his separate will." Annot., 169 A.L.R. 14-15. Such a will, however, may be revoked in a manner provided by Estates & Trusts Art. § 4-105, and a subsequent will, validly executed, and which is the last will of the testator, shall be admitted to probate. But, the contract upon which the prior will was executed, upon proof of its validity, may be specifically enforced in equity, or damages recovered upon it at law. See P. Sykes, *Maryland Probate Law and Practice*, § 12 (1956).

We hold that the Circuit Court for Charles County was correct in ordering that the 1957 will of Lillie W. Pumphrey be admitted to probate.

## III

Daughters contend that regardless of the weight of authority elsewhere, the law of this State is that found in *Dufour v. Pereira*, 1 Dick. 419, 21 Eng. Reports 332 (1769). They suggest that it was part of the common law of England to which the inhabitants of Maryland are constitutionally entitled. Art. 5, Declaration of Rights, Constitution of Maryland. In *Dufour*, a husband and wife made a mutual will. The husband died, the wife proved his will, and afterwards made another will. The question was whether it was in the power of the wife to revoke the mutual will. Lord Camden found that the mutual will was a contract between the parties, which could not be rescinded but by the consent of both. "The first that dies carries his part of the contract into execution. Will the Court afterwards permit the other to break the contract? Certainly not." 1 Dick. at 421. He declared that the wife, "having proved the mutual will, after her husband's death; and having possessed all his personal estate, and enjoyed the interest thereof during his life; hath by those acts bound her assets to make good all her bequests in the said mutual will; and therefore let the necessary accounts be taken." *Id.*

Assuming that the holding in *Dufour* was part of the common law of England to which the inhabitants of Maryland were entitled in 1776, our holding is not changed. First we note that *Dufour* was an action in chancery. As such it is not in real conflict with the law of this State. We have seen that in Maryland a mutual will may be enforced as a contract in equity and this is precisely the effect of *Dufour*, that the wife could not break the contract, the mutual will being binding. In this context, loosely stated, the mutual will may be said to be irrevocable, although it is actually the underlying compact which is enforceable. Concisely stated, of course, it is the contract and not the mutual will which is irrevocable.[8]

---

8. We observe that Sykes cites *Dufour* as authority for his statement in § 12 of his *Maryland Probate Law and Practice* that "If in violation of the 'agreement' so made [by a mutual will] one of the parties to the joint or

In any event, we observe that the common law is not static but adapts itself to changing conditions and increasing knowledge. It may be changed by judicial decision, *Latz v. Latz*, 10 Md. App. 720, and by legislative enactment, *In re Davis*, 17 Md. App. 98. *See Jackson v. Jackson*, 15 Md. App. 615. Therefore, if the present law of Maryland is deemed to be not in accord with *Dufour's* reflection of the old common law, *Dufour* is not now controlling.

### IV

All that we have been called upon to do on this appeal, and all that we have done, is to determine the propriety of the order of the Circuit Court for Charles County that the 1957 will of Lillie W. Pumphrey is to be admitted to probate rather than her 1942 will. Any other questions which must be resolved to enable the administration of the estate to proceed were not before us. Some, as for example, whether the 1942 will was a "mutual" will, that is one executed pursuant to an agreement between Lillie and her husband, and whether it is specifically enforceable as a contract, are determinable in the pending equity action below. We reiterate that we have decided only that there was no error in admitting the 1957 will to probate.

> *Judgment affirmed; appellants to pay costs.*

---

mutual wills executes a new will the latter is recognized as his last testament, but the courts will require the executor and the beneficiaries to perform the contract of their decedent, on the theory of a resulting trust in favor of the beneficiaries of the joint or mutual will."