# FRANK S. LEWIS

*vs.*

## HARRY S. CARVER et al., Trustees.

*Equitable Election—Devise by Part Owner—Partition Sale—
Presumption—Continuance of Seisin.*

A devise of "the Jerusalem Farm," which farm had been occupied by testatrix as an entirety for several years, *held* to be intended as a devise of the entire interest in the farm, and not merely of the part interest therein belonging to her, and consequently to call for the application of the doctrine of equitable election as against the owners of the other part interest, to whom legacies were given by the same will.

pp. 128-130

That one had but a small interest in the property as compared with the interests of his co-owners, cannot affect his right to have the whole property sold as not being partible in kind without loss or injury to the owners.        pp. 131-133

A testamentary disposition of "all my personal property including my share of the estate inherited from our parents" *held,* in view of the presumption against intestacy, to include real estate, as well as personal property, inherited from the parents.        pp. 134, 135

It appearing that, under a certain will, deceased took an undivided fifth interest in a certain farm, and that she exercised acts of ownership in regard thereto, it will be presumed that the seisin thus obtained continued until her death.        p. 135

*Decided January 12th, 1922.*

Appeal from the Circuit Court for Harford County, In Equity (HARLAN, J.).

Bill by Howard E. Lewis and others against Frank S. Lewis and others. From a decree directing a sale for the purpose of partition, and appointing Harry S. Carver and

W. Worthington Hopkins trustees to make sale, said Frank
S. Lewis appeals.   Reversed.

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and
OFFUTT, JJ.

*Edward Hall, Jr.,* and *Edward J. Colgan, Jr.,* for the
appellant.

*W. Worthington Hopkins* and *Harry S. Carver,* for the
appellees.

OFFUTT, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for
Harford County, in equity, directing the sale for purposes
of partition of a farm located in that county, which was, at
the time of his death in 1880, owned by Joseph H. Lewis.

The pleadings in this case, with the exception of a peti-
tion to which we will refer later, so far as they are material
to the questions raised by this appeal, are set forth at some
length in the case of *Lewis* v. *Lewis,* 136 Md. 601, and it is
therefore unnecessary to restate here the allegations con-
tained in them.

The present appeal submits for our consideration three
propositions, which in the order of their relative importance
under the facts of this case are: (1) that the doctrine of
equitable estoppel is applicable to the facts of this case and
constitutes a complete defence to the bill of complaint; (2)
that the interest of the complainants in the farm is so small
in comparison with that of the defendants that it is not
necessary to sell the whole farm to satisfy it, but that it can
be satisfied by setting off to them a part of it or selling only
so much thereof as may be necessary to satisfy their claims,
and (3) that the complainants have shown no interest in the
farm which entitles them to ask for its partition or sale.

The facts from which these questions arise are these: Joseph H. Lewis, dying in 1880, left to survive him a widow, and seven children, five daughters and two sons. In his will, probated in that year, he devised all of his property to his wife for life, with the remainder over equally to his five daughters, Mary E. Curtiss, Ann Elmira Lewis, Olivia or "Olevia" J. Lewis, Eloiza S. Lewis, and Elizabeth Hollingsworth. The will also contained other provisions, but as they are not material to the questions before us they need not be further referred to. The life tenant died in 1885, and the interests devised to Mary E. Curtiss and Elizabeth Hollingsworth were conveyed by them in 1888 and 1892, respectively, to Ann Elmira Lewis and Eloiza S. Lewis, so that each of them then owned a two-fifths undivided interest in the farm. Ann E. Lewis, at her death in 1895, devised her interest in the farm to her sister Eloiza S. Lewis for her life, with the remainder over to her brothers and sisters and their heirs equally. Olivia J. Hollingsworth, nee Lewis, died in 1910, intestate and without surviving husband or issue. Mary E. Curtis died in 1905 leaving to survive her five children; Charles W. Lewis died in 1917 leaving seven children and a widow to survive him; and Eliza or Eloiza S. Lewis died in 1918, leaving a will which was duly admitted to probate in the Orphans' Court of Harford County. In this will she made the following disposition of her property:

"I bequeath to my brother, Charles W. Lewis, a ground rent on E. Ann St., n 61 x 83 and Five Hundred dollars. To my brother Frank S. Lewis, the Jerusalem Farm and my share of the money in the house, he to provide a home for me and pay funeral and all other expenses at my death.

"To Ida and Dora Curtiss each One hundred dollars.

"To Lewis E. Hollingsworth, One Hundred Dollars.

"To Marian Curtiss, Eva W. Curtiss and Ethel Curtiss, each One Hundred Dollars.

"To C. Morton Lewis, Herbert S. Lewis, Joseph H. Lewis, F. Hall Lewis, Edith L. Armiger and Dorothy A. Lewis each One Hundred Dollars.

"To Eleanor L. Bricker, One Hundred Dollars.
"To William L. Lewis, One Hundred Dollars.
"To Frank M. Lewis, One Dollar.
"To Carroll S. Lewis, One Hundred Dollars.
"To Howard W. Lewis, Ground rent on E. Ann
Street n 12 x E 83."

Frank S. Lewis, the only survivor of the seven children of
Joseph H. Lewis, and the appellant in this case, in addition
to the interest he acquired under that will, also acquired all
the interest of the heirs at law of Mary E. Curtiss and Eliza-
beth Hollingsworth, which interest were what they took un-
der the will of Ann E. Lewis and as heirs at law of Olevia
J. Lewis. So that Frank S. Lewis owned the whole estate
in the farm except the interest which the widow and children
of Charles W. Lewis held as his heirs at law, which was the
part he took under the will of Ann E. Lewis and (2) the
part which he took as an heir at law of Olevia J. Lewis.

During the trial of the case, a certified copy of what pur-
ported to be a will of Olevia J. Hollingsworth, dated No-
vember 30, 1895, was offered in evidence. The paper had
been offered for probate, but had never been actually pro-
bated because of the pendency of a caveat to it. It read as
follows:

"I, Olevia J. Hollingsworth, being in good health
and sound mind, make this, my last will and testa-
ment, on this the thirtieth day of November in the
year of our Lord eighteen hundred and ninety-five,
it being that I give and bequeath to Eloiza S. Lewis,
my sister (should she survive me) all claims, be it
notes or mortgage or other debts I may hold against
her or property in her possession.
                                    "Olivia J. Hollingsworth.
"Test: Adelaide H. Lewis.
"Test: Eva Willoughby Curtiss.

"If Silas W. Hollingsworth should outlive my sis-
ter Eloiza, he is to inherit my the farm or the pro-
ceeds, if it should be sold, and at his death it is to be

equally divided between my three nieces, Ethel Cur-
tiss, Edith H. Lewis and Eleanor Lewis.

"Olivia J. Hollingsworth.

"November 4, 1898.
    "Adelaide H. Lewis.
    "Phebe Hebb."

On the same paper was what purported to be a will or a
conveyance by Olevia J. Hollingsworth of her interests in
the property to Eliza S. Lewis and which reads as follows:

"Ingleside, 3-12, 1909.

"In consideration of love and affection and two
hundred dollars I give to my sister, Eliza S. Lewis,
all my property of every description.

"Olivia J. Hollingsworth."

If these instruments are valid, then the interest of the
complainants in the farm was estimated to be about two
twenty-fifths; if they are not, then the interest may be ap-
proximately given as something less than one-eighth of the
whole farm. Their validity and effect are in dispute, but
as the question is not directly involved in this appeal, we feel
that we should not finally dispose of it on the record in this
case, but under the record, in passing upon the questions in-
volved in this appeal, we will assume that these instruments
were not effective to pass any interest in the farm in con-
troversy, and may be disregarded.

After this case had been remanded by this Court to the
Circuit Court for Harford County for further proceedings,
Frank H. Lewis, a defendant, filed a petition in that court,
setting out in substance the facts to which we have referred,
and asking the court to postpone the taking of testimony
until it should have determined whether the doctrine of
equitable estoppel was applicable to those facts. A demurrer
to that petition was sustained, and testimony bearing upon
the issues involved was taken and filed, and on March 25,
1921, a decree was passed directing a sale of the property for

purposes of partition, and from that decree this appeal was taken.

Coming now to the questions raised by the appeal, we will first consider the appellant's contention that the doctrine of equitable election applies to the facts of this case, and that as Eloiza S. Lewis, in her will, devised to Frank S. Lewis, the "Jerusalem Farm," as though she were the sole owner thereof, whereas in fact the complainants had an interest in it, and since in the same will she made bequests to Charles W. Lewis which are claimed by his widow and children, that they should be made to elect whether they will take their interest in the farm or the legacies under the will. The facts relating to this question rest mainly on the documentary proof to which we have referred, and are not seriously disputed.

After the death of their father in 1880, Eloiza and Ann Elmira continued to live on the farm with their mother until her death in 1885. After that the two sisters lived on there together until the death of Ann E. Lewis in 1895. And after her death Eloiza occupied the farm alone until the dwelling was burned down about 1900. She did not think she could undertake rebuilding the house and her brother Frank H. Lewis says he agreed to buy the farm for $2400. He did not pay the $2400, and received no deed for the property, but he did take possession of it, rebuilt the dwelling house and has ever since remained in possession of the property and appears to have acted as the owner thereof. He said that he did not pay the $2400 because "they" told him he could "have" the place if he would build a house on it and provide a home for his sisters. During the life of Olevia, Eloiza lived with her, and occasionally visited Frank H. Lewis at the farm, but upon the death of Olevia in 1910 she went to live with her brother, who then occupied the farm, and remained there until her death in 1918. It was under such circumstances that she made the will now under consideration. In that will she devised to Frank H. Lewis "the Jerusalem Farm." It is not disputed that she was not at the

time the sole owner of the Jerusalem Farm, nor that at that time Charles W. Lewis, her other brother, was a co-owner thereof with her, but the only question is whether when she spoke of the "Jerusalem Farm" she meant to describe and designate the entire farm which was known by that name, or only her interest in it, and it is upon the answer to that question that the applicability of the doctrine of equitable estoppel turns in this case.

The legal principles involved in the doctrine of equitable election are clear and well settled, and while the phraseology in which the rule is stated varies, there is no real conflict in the authorities as to the underlying principles upon which it rests. In *McElfresh* v. *Schley,* 2 Gill, 200, this Court stated the rule in the following language: "From the earliest case on the subject, the rule is, that a man shall not take a benefit under a will, and at the same time defeat the provisions of the instrument. If he claims an interest under an instrument, he must give full effect to it, as far as he is able to do so. He cannot take what is devised to him, and at the same time, what is devised to another; although, but for the will, it would be his; hence he is driven to his election to say, which he will take." This definition and the statement of the rule given in that case have been uniformly recognized and followed by this Court. *Thom* v. *Thom,* 101 Md. 444; *Hyatt* v. *Vanneck,* 82 Md. 465; *Kuykendall* v. *Devecmon,* 78 Md. 537; *Albert* v. *Albert,* 68 Md. 352; *Barbour* v. *Mitchell,* 40 Md. 151; *McLaughlin* v. *Barnum,* 31 Md. 442; *Smith* v. *Townshend,* 27 Md. 368; *Whitridge* v. *Parkhurst,* 20 Md. 62; *Marriott* v. *Badger,* 5 Md. 306; *Jones* v. *Jones,* 8 Gill, 197; *Waters* v. *Howard,* 8 Gill, 262; *Addison* v. *Bowie,* 2 Bl. 606; *Hall* v. *Hall,* 1 Bl. 130. And they are in accord with the views expressed by the text writers and in the decisions of other courts. *Underhill, Wills,* sec. 726 *et seq.; Alexander, Wills,* sec. 813; 28 *R. C. L.,* page 328; 40 *Cyc.,* 1960. While the application of the rule generally depends upon the intention of the testator, yet it has been said that the real foundation of the doctrine is in equity, "that he

who seeks equity must do equity." *Alexander, Wills,* sec.
817. But in cases in which the intention of the testator can
be ascertained from the will itself it is usually regarded as
controlling.

In applying the general rule, to which we have referred, to
cases in which the testator devises to a stranger property
which he owns jointly with another, as though he were the
sole owner thereof, and at the same time devises property
which he does own in severalty to his co-owner in the prop-
erty devised to a stranger, a subsidiary rule of construction
has been generally recognized and adopted and that rule has
been fairly stated in the following language: "To raise a
case of election, the language of the testator must clearly
express an intention to dispose of property not his own. If
a testator make a disposition in general terms of property in
which he has only a partial interest, he will be presumed to
have intended to bequeath only so much thereof as he was
properly entitled to give; and if in the same will a benefit
be conferred upon the person who shares with him the title
or interest in the property subject to the bequest, such person
will not be required to elect between relinquishing his right
therein and accepting the benefit conferred by the will. * * *
But a specific devise of land in which the testator has an
undivided interest will put the other owners to their elec-
tion." *Alexander, Wills,* sec. 816. See also 40 *Cyc.,* 1961.
In applying this rule the primary object is the ascertainment
of the testator's intention, and, in arriving at that object,
naturally greater weight is given to a specific than to a gen-
eral description of the property devised. In *Pratt* v.
*Douglas,* 38 N. J. Equity, 537, it is said: "Where a testator
has only a limited interest in property he affects to dispose
of by his will, as, for instance, an undivided share, there is
a distinction between a gift in general words of description,
such as 'all my lands,' or 'all my estate,' and the like, and a
gift of specific property. In cases of the first class, an obli-
gation to elect does not arise, for the testator's language can
have full effect when applied only to his share or interest,

and he is presumed to have intended to give only the property he had power to dispose of. In cases of the second class, it cannot be said that, upon every specific devise or bequest, a duty to elect arises. A case for an election by the co-owner of the property so given, who is a beneficiary under the testator's will, will be presented only where the testator's gift of it to another is so expressed by words of description as to import an intent to give to the latter the whole of the common property in its entirety." In *Padbury* v. *Clark,* 2 Macn. & G. 298, where the testator, being entitled in fee to undivided moieties of two freehold houses, and also to an undivided moiety in a leasehold house, devised "all my freehold messuage or tenement with the garden," &c. referring to one only of the freehold houses, it was held that this specific description of the property conveyed sufficiently demonstrated the intention of the testator to devise the entirety, to require his co-owner to whom other property was devised by the will to elect between her rights in her property so devised away from her and the devise to her in the will. And in *Miller* v. *Thurgood,* 33 Beav. 499, in dealing with a similar case, Sir John Romilly, Master of the Rolls, said: "If a testator having an undivided interest in a particular property, devises that property specifically to his co-owner, a case of election arises, and the devisee must elect between his own interest in the property and the interest he takes under the will. But if the testator does not dispose of it specifically, but by general words, such as 'all my lands and hereditaments' or the like, no case for election arises, because there is other property of the testator's sufficient to satisfy the devise itself. All the cases cited, as *Padbury* v. *Clark* (2 Macn & Gor. 298); *Fitzsimmons* v. *Fitzsimmons* (28 Beav. 417) and *Honywood* v. *Forster* (30 Beav. 14), point in that direction; they are perfectly consistent with the other cases which were cited to me, and show clearly that where there is a mere general devise no case for election arises. That being the state of the law, the real question is,

whether this will disposes of the property specifically. The
testator had a freehold messuage in Potter Street, he had
another freehold messuage in South Street, and in addition
to this he had two-thirds of a messuage and of eighteen
cottages in South Street. Having this property he devises all
his freeholds, etc., in those streets to his wife for life. Now,
if he had devised them in these terms, 'all and every my free-
holds in Potter Street and South Street and elsewhere, with
the appurtenances,' I should be of opinion that no case for
election arose. But he specifically points to his 'cottages' in
South Street, and that being so, I am of opinion that these
words can only refer to the messuage and eighteen cottages
of which he had only two-thirds, and consequently I am of
opinion that a case for election arises."

Applying these principles to the facts before us, in our
opinion the complainants should have been required to elect
as to whether they would take under the will, or whether they
would assert and maintain their title to an undivided in-
terest in the property in question.

The devise in this case is specific, it names the thing which
is devised, to wit, the "Jerusalem Farm," and as though to
emphasize the testator's intention to devise by those words
the entirety, there immediately follows a devise of *"my share*
of the money in the house." "The Jerusalem Farm" was the
name by which the testator knew the farm in question. She
neither owned nor was interested in any other farm. That
farm she had herself occupied as an entirety for many years,
and, when she spoke of the "Jerusalem Farm," she could
only have referred to the entirety of the farm which she
occupied and not merely to her interest in it. Whether she
believed she actually did own the entirety is not material,
the only question being, Did she believe that by using the
words "The Jerusalem Farm" in the devise to her brother
she was giving to him the farm in its entirety? Since she
knew at the time the distinction between title to a part only
and title to an entirety, as shown by the will itself, and since
the words used did specify and describe the property devised

as an entirety, we must hold that she intended to devise it as an entirety.

The second question presented by the record is whether, in the event the plaintiffs elect to assert their rights in the property in question, they are entitled to have the farm sold. The defendant asserts that they are not, because it is said their interest in it is so small as compared with his that it can be satisfied by setting off to them or selling a part of it. If that contention is sound, the right of a joint owner of property to have it sold for purpose of partition would be made to depend in part at least upon the extent of his interest in the property as compared with the interests of his co-owners, and not upon whether the property was partible in kind without loss or injury to the owners thereof. We do not assent to that proposition, nor do we understand that the case of *Gittings* v. *Worthington,* 67 Md. 139, relied upon by the appellant, so decides. What that case did decide, under the circumstances peculiar to it, was that, if the property involved there could be divided in kind among the parties entitled, without injury to the interests of the parties affected, such a division should be made, and in so deciding the Court rested upon the language of the statute, which provided that a sale of property upon the complaint of a joint owner could be had where the property could not be divided in kind among the owners thereof without loss or injury. That provision, *section* 137, *article* 16, *Code Pub. Gen. Laws,* reads in part as follows: "The Court may decree a partition of any lands, tenements or hereditaments, or any right, interest or estate therein, either legal or equitable, on the bill or petition of any joint tenant, tenant in common, or any parcener or any concurrent owner, whether claiming by descent or purchase, or if it appear that said lands, tenements or hereditaments, or right, interest or estate thereon cannot be divided without loss or injury to the parties interested, the court may decree a sale thereof." There is nothing in this language to justify the implication that the right thus conferred upon co-owners of property, which cannot be divided among them without loss

or injury, to have it sold for partition, is limited by the extent of the interest which the person bringing the suit may have in the property, but on the other hand its clear and obvious meaning is that a sale of the common property may be decreed upon the bill or petition of any concurrent owner thereof, where it appears that the property cannot be divided among the parties entitled without loss or injury. If it cannot be so divided, then the court may pass a decree for its sale; if it can be so divided then the court cannot decree a sale thereof. Not only does the statute expressly say that, but that is the construction uniformly given to it by this Court. In *Booth* v. *Eberly,* 124 Md. 27, where some of the owners of a one-seventh interest in a farm filed a bill for the sale thereof for purposes of partition against the holder of the remaining six-sevenths interest, JUDGE URNER, speaking for the Court, said: "The bill is filed by some of the owners of the remaining one-seventh in order to realize their interest by a sale of the estate as a whole on the ground that it is not susceptible of being divided without loss and injury to those entitled. The right given them by statute to pursue this course is not affected by the mere fact that the devisor of the other six-sevenths interest has made the disposition in question," and in *Wilson* v. *Green,* 63 Md. 547, it was said that this provision of the Code "has uniformly been supposed and held in the State, to authorize a court of equity to order a sale for the purpose of partition whenever it was alleged and proved that the property sought to be sold "could not be divided without loss or injury to the parties interested," and in *Ballantyne* v. *Rusk,* 84 Md. 650, it was said: "The jurisdiction of the court depends on whether the averments of the bill sufficiently allege that the property cannot be divided without 'loss or injury,' and if this fact be stated in the bill, it is all that is essential to entitle the party to the aid of a court of equity." To cite all the cases in this State supporting this construction of the statute would unduly prolong this opinion, and it is sufficient to say that the cases cited

state the rule as it has been recognized by this Court. Our attention has been called to several cases decided in other states, and which the appellant claims support his contention. Since, however, we are bound by the language of the statute and by our own decisions construing it, our conclusion could not be affected by a consideration of those cases, and it becomes unnecessary to discuss them further.

It is unnecessary to analyze in detail the testimony offered by the respective parties as to whether the property could be divided in kind among the co-owners thereof without loss or injury; the only real divergence in the opinion of the witnesses on that point being, not as to whether the whole property could be so divided, but whether the interests of the complainants could be satisfied by valuing those interests and allotting to them a portion of the property in question in satisfaction of them. The evidence, we think, fairly established the fact that the farm could not be divided in kind without loss or injury among the co-owners thereof and, that being so, the complainants were entitled to have it sold and the proceeds distributed to the owners according to their several interests. In dealing with such property, the only way in which its value can be definitely established for the purposes of such a case as this is by a sale. It is not property such as that involved in the case of *Gittings* v. *Worthington, supra,* where the Court said that the portion to be set off to the claimants could be "fairly and justly ascertained even to the fraction of an inch," but farm property, and the value of any portion of it depended very largely upon the fact that it was a portion of the whole. Any valuation of a portion of the property in controversy severed from the farm and considered independently thereof would necessarily be a matter of pure speculation, either with regard to its intrinsic value or its value in relation to the farm as a whole, and we know of no rule of law in this State by which a co-owner of such property can as a matter of right require one, owning a smaller interest therein, to part with such interest for an award so hazardous and uncertain.

The next question presented for our consideration is whether the complainants have any interest in the property in question. Their title depends upon the will of Ann Elmira Lewis, and the intestacy of Olevia J. Hollingsworth. The appellant contends that by a true construction of the will of Ann E. Lewis no real estate passed under it, and (a) that it does not appear that Olevia was seised of any interest in the farm at her death, and (b) that if seised she did not die intestate but devised her interest in the property to Eloiza under whose will the appellant claims.

Taking up these questions in their order, Ann E. Lewis in her will used this language to dispose of her property: "I, * * * hereby give and bequeath to my sister, Eloiza S. Lewis for her use during her natural life or until she shall marry, all my personal property including my share of the estate inherited from our parents; the same at her death or upon her marriage if she should marry, to be equally divided between my other sisters and brothers or their heirs." The question is, did the testator mean by this language to dispose of her entire estate or only her interest in the personalty. In such an inquiry the primary rule of construction is to ascertain and give effect to the intention of the testator. 40 *Cyc.* 1386; *Poultney* v. *Tiffany,* 112 Md. 630. And it is presumed that a testator "intended to dispose of his entire estate and not to die intestate either as to the whole or any part thereof." 40 *Cyc.* 1409; *Lavender* v. *Rosenheim,* 110 Md. 150. "The word 'estate,' unless restricted in its meaning by the context, will include all the property of the testator." 40 *Cyc.* 1525.

Reading the will in the light of these principles, we have no doubt that the testator intended to dispose of her real as well as her personal property. Every consideration leads to that conclusion. Her purpose was manifestly to secure the sister with whom she lived for so many years against any interference with the joint property which they used and occupied, as long as she remained unmarried, and then to have her property go to her brother and sisters, and, in using

the words "my share of the estate inherited from our par-
ents," she intended to accomplish that purpose, because that
"estate" included her share, an undivided interest in the
farm on which they lived, and she did not intend by the use
of the words "personal property" to qualify her use of the
word "estate."

The next objection, that it does not appear that Olevia J.
Hollingsworth was seised of an interest in the farm at the
time of her death, is without merit. It is not disputed that,
under the will of Joseph H. Lewis, upon the death of the life
tenant, she took in fee an undivided one-fifth interest in the
farm, and it appears from the testimony and from the answer
of the appellant that she exercised acts of ownership in re-
gard thereto. Under such circumstances the rule stated in 1
*Jones, Evidence,* sec. 58h, that: "Possession of either realty
or personalty once proved is presumed to continue until the
contrary is shown. Thus, it is proved that at a given time B
was seised of certain land. The presumption is that such
seisin continues, and the burden is on him who alleges dis-
seisin," applies. There is nothing in the record to support
the charge that Olevia J. Hollingsworth did not die intestate
as to her interest in the farm. The paper writing offered as
her last will, even if it had been probated and were properly
before us, is patently insufficient for that purpose, since the
operation of the only part of it which refers to the farm at all
was made to depend upon a contingency which never hap-
pened.

Some reference was made in the appellees' brief to the
right of Frank S. Lewis to compensation for improvements
made by him on the property, but as that question is not dealt
with in the decree we will express no opinion in regard to it.
If the complainants elect to take the legacies left them by the
will, the question will not arise, and if they elect to stand on
their rights in the farm, it can be considered in connection
with the distribution of the proceeds of any sale of the prop-
erty in this proceeding.

Opinion of the Court.

For the reasons given, it follows that the decree appealed from must be reversed and the cause remanded, in order that the complainants in this suit may be required to elect within some reasonable time, to be fixed by the court, whether they will claim the legacies to which they are entitled under the will of Eloiza S. Lewis, or whether they will assert their rights to an interest in the farm devised by that will to the appellant.

> *Decree reversed and cause remanded for further proceedings in accordance with the views expressed in this opinion, the costs in this Court to be paid by the appellees and the costs in the lower court to abide the final decree.*