WILSON *v.* SAFE DEPOSIT & TRUST CO. OF BALTIMORE, ET AL.

[No. 8, April Term, 1944.]

*Decided May 3, 1944.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, MELVIN, and BAILEY, JJ.

*Z. Townsend Parks, Jr.,* with whom was *Howard C.
Bregel* on the brief, for the appellant.

*George M. Brady* for Safe Deposit & Trust Co., with whom were *G. C. A. Anderson* for Cora L. Hall, and *Louis F. Meyer, Jr.*, for Katherine King Ehlen, on the brief, for the appellees.

MELVIN, J., delivered the opinion of the Court.

The appellant, James E. Wilson, is a beneficiary under the last will and testament of the late Mrs. Julia L. Snyder, of Baltimore County, and is also the obligee under a contract with her executed eight years before her death in May, 1942. Specifically, under the terms of the will and two codicils thereto, he is entitled to (1) the release of a $3,000 mortgage held by her; (2) an annuity of $900 a year, and (3) the conveyance of a portion of the real property owned by the testatrix at "Holly Point" on the Severn River in Anne Arundel County. Under the contract, he is entitled to the release of this same mortgage and, in addition, to the conveyance of all the said property at Holly Point, instead of a portion only.

The court below decreed that the doctrine of equitable election applied and that the appellant must choose between taking under the will or under the contract, but that he could not take under both. The present appeal is from this part of the decree (paragraphs one and two), the other parts of it not being involved here.

There is no dispute as to the general principles of law pertaining to this issue. They are well settled and are relied on by both sides alike in support of their respective contentions. The question is whether the facts and circumstances of this particular case and the language used by the testatrix in her various wills and codicils are sufficient, under the accepted rules of construction, to indicate an intention on the part of the testatrix to raise an election by her donee, Wilson.

The controlling principle here is that the intention to raise an election must be clear and manifest from the will itself, and that in order to bring the doctrine into existence it must be obvious that a benefit has been

conferred by the will, coupled with an intention on the part of the testator to dispose of property belonging to the donee of the benefit. The necessity for it can never arise from an uncertain or dubious interpretation of the clause of donation in a will or other instrument. *Miller, Construction of Wills,* par. 335; *Pomeroy Eq. Jur.,* 5th Ed., Vol. 2, par. 472; *Story Eq. Jur.,* 19th Ed., Vol. 3, pars. 1462, 1470; *Thompson on Wills,* 2nd Ed. Secs. 471 472; *Smith v. Townshend,* 27 Md. 368, 92 Am. Dec. 637; *Jarman, Wills,* 7th Ed., 417, 520. See also *Beall (McElfresh) v. Schley,* 2 Gill. 181, 186; *Barbour v. Mitchell,* 40 Md. 151; *Lewis v. Carver,* 140 Md. 121, 117 A. 108; *Smith v. Smith,* 113 Md. 495, 77 A. 975.

The inquiry therefore becomes: What evidence is there in the record before us of an intention on the part of the testatrix, Mrs. Snyder, to dispose of property through her will and codicils that would otherwise belong to the particular donee, Wilson? It is to be noted and emphasized at the outset that the property in question (the easterly portion of Holly Point) is not specifically devised to anyone, so that it must pass either to Wilson, the appellant, under his claim as hereinafter mentioned, or to the residuary estate of the testatrix.

Another point of particular significance which persists throughout the consideration of this case and throws a very direct light on the issue of testamentary intention is the conspicuous failure of the testatrix to mention an election when the several opportunities to do so were open to her and it could have been done so simply. The Court is asked now, on behalf of the appellees, to write into her will and codicils a provision which she, herself, did not put there, although the draftsman of all of these instruments was her personal attorney and the same counsel who is representing her executor on this appeal.

The applicable rule of law on this point is that expressed in *Miller, Construction of Wills,* at paragraph 334, supra: "No person will be compelled to make an election unless the intention of the testator be sufficiently made out; and there cannot be a case of implied

election except upon a presumed intention of the testator. The degree of intention necessary to raising a question of election must plainly appear on the face of the will."

The record shows that Mrs. Snyder made three wills, and, to the last one, four codicils. All of these instruments follow in point of time the execution of a paper on August 30, 1934, called an "agreement and lease" but also referred to as a "contract," between her and the appellant, James E. Wilson. According to this contract Mrs. Snyder, promised and agreed, for certain named considerations, as follows: "* * * That should neither of said parties terminate this agreement prior to her death, then and in that event she, Julia L. Snyder, will devise to James E. Wilson her land with the improvements thereon at Holly Point, and will release James E. Wilson from all obligations under the aforesaid mortgage of $3,000.00."

At the time of Mrs. Snyder's death on May 9, 1942, neither party had, in fact, terminated said agreement, and Mr. Wilson now claims the benefits accorded him by its terms, as aforesaid. However, Mrs. Snyder's last will and testament, dated May 16, 1940, did not devise to him any of the Holly Point property, although her two preceding wills, dated respectively, May 10, 1935, and May 18, 1938, did devise to him all of it, as prescribed by the contract. In all three of the wills she provided for the release of the $3,000 mortgage and also for a trust fund in Wilson's favor assuring an annuity of $900 payable $75 monthly, with the proviso in the last will for an increase of this amount to $125 a month in case of the beneficiary's sickness or infirmity. It was not until Mrs. Snyder made the codicils to her last will that she again dealt with the subject of the Holly Point property.

In her first codicil, dated February, 1941, she devised to Wilson the westerly portion of this property, that is, the portion lying westerly of a new cut cinder road, as shown on the plat filed in the case, and made no

mention at all of the easterly portion of this property. By the second codicil, dated, December, 1941, she revoked this devise, did not mention it in her third codicil, and then, finally, by her fourth codicil dated April 18, 1942, she re-instated the devise precisely as it had been set out in item four of her first codicil. That is the way the matter stood at the time of her death on May 9, 1942.

In pursuing the inquiry as to evidence of the testatrix's intention to raise an election on the part of the donee, Wilson, a review of the background and personal relationship of these parties is enlightening. Mrs. Snyder was an elderly widow of intelligence and business judgment, who, after the death of her husband and their only son, lived very much alone. The appelant, James E. Wilson, was her faithful servant for over twenty years, performing all kinds of duties as well as being her personal attendant on a full-time schedule, residing in her home. He also acted as nurse and cook when needed, in addition to serving as her chauffeur and in any other capacity requested by her. He was regarded not only as a faithful and trustworthy servant, but as a friend and helpmate upon whom she could lean in her own daily life.

In October, 1927, Wilson acquired certain lots at Holly Point, above mentioned, for $6,500, and Mrs. Snyder advanced him $3,000 to help finance this purchase. He executed a mortgage to her for this loan, which was never recorded. Some three years later, Mrs. Snyder acquired all of the remaining property at Holly Point and occupied as her summer home the dwelling house there. Wilson had rented the bungalow on the lots which he had acquired, and in order to bring the entire real estate holdings at Holly Point under the exclusive control and use of Mrs. Snyder, she and Wilson entered into an agreement under date of August 30, 1934, to accomplish that purpose. The details of this agreement are not relevant to the pending issue, except that portion of it hereinbefore quoted and which em-

bodies an obligation on the part of Mrs. Snyder to devise to Wilson all of her land, with the improvements thereon, at Holly Point and to release him from the obligation of the $3,000 mortgage, provided that neither party had terminated the agreement at her death. Mrs. Snyder did actually have the use and control of Wilson's portion of Holly Point, and there is no question that he performed his part of the contract. Her contractual obligation, in turn, was clear and explicit to make the stipulated devise to him.

The very next year (May, 1935) she did undertake to carry out this part of the contract by the execution of her first will, specifically releasing the mortgage and also devising all of her property at Holly Point to Wilson. She even went further than that, and set up a trust fund for him providing a net annual income of $900, payable $75 a month, during his life accounting from the day of the testatrix's death. It is quite evident that this was what she conceived to be a moral obligation in recognition of faithful services rendered, and was apart from, and in addition to, the legal obligation under the contract. Then, again, in her next will (May, 1938) she made precisely the same provisions for Wilson.

However, when her last will was executed in May, 1940, Mrs. Snyder for the first time failed to make any mention at all of the Holly Point property. Within the following year (February, 1941) she reverted again to the subject of this property, but this time, by a codicil to her last will, she devised to Wilson only a portion of Holly Point—that is to say, the portion lying westerly of a new cut cinder road, as aforesaid—and made no mention of the other portion. It is to be noted here that according to the record that part devised to Wilson is valued at $3,450 and the other portion at $8,160.

When Mrs. Snyder came to make her second codicil she had changed her mind again about the Holly Point property, and revoked outright the devise to Wilson. Her final codicil (the fourth) re-instated the devise as

provided in the first codicil. Throughout this sequence of developments the only change that Mrs. Snyder made in her testamentary dealings with her faithful employee, Wilson, was regarding this Holly Point property, and as to this she was firmly bound by her contract with him of August, 1934. She was obligated to devise him all of this property, in addition to releasing the $3,000 mortgage.

That equity will take cognizance of such a contract and enforce it is well settled. As stated by this Court in *Wilks v. Burns*, 60 Md. 64: "There can be no doubt of the legal right of one, having the exclusive ownership of property, to enter into a contract to execute a will in favor of the other contracting party; but such transaction cannot be properly termed a testamentary disposition of property; two or more contracting parties having concurred and bound themselves by reciprocal obligations, founded on good and valuable considerations. The testamentary document is nothing more than a part of the contract, which has been determined by mutual stipulations, controlling the mind of the testator." *White v. Winchester,* 124 Md. 518, 523, 92 A. 1057.

Moreover, such a contract is enforceable against heirs, devisees or representatives just as though the deceased obligor were a party to the suit, by treating the heirs as trustees and compelling them to convey the property in accordance with the terms of the contract. *White v. Winchester,* supra; *Soho v. Wimbrough,* 145 Md. 498-510, 125 A. 767; *Mundorff v. Kilbourn,* 4 Md. 459; *Hamilton v. Thirston,* 93 Md. 213, 48 A. 709.

This would, of course, apply to the executor of the testatrix and, in the instant case, the obligation is upon it to convey to the appellant the interest of the testatrix in all of her Holly Point real property. This course of action is supported by all of the authorities, as aptly expressed in 69 *A. L. R.* 102, where the rule is stated as follows: "Although there is a provision in the will for the benefit of the promisee, yet where such provision does not appear to have been made for the purpose of

satisfying the obligation of the testator, but it sufficiently appears to have been prompted by a wholly different motive, the acceptance of the benefit of the provision does not constitute an election of remedies."

Therefore, Mrs. Snyder's testamentary document, executed in pursuance of her contract with Wilson, is nothing more than a part of said contract and enforceable according to its terms. The provision for an annuity which she made for Wilson in her very first will (1935) and which she included in every subsequent will and codicil, was due to her generosity and her appreciation of exceptionally loyal and meritorious services over a period of twenty years, and was entirely apart from any contractual obligations.

If it had been her intention to substitute this annuity, which she was not bound to give, for all of her real estate holdings at Holly Point as called for by the contract, it would have been very easy for her to have expressed it in simple language. Her failure to have done so is a circumstance which, in itself, weighs heavily against the application of the doctrine of election in this case.

The Court will not ascribe to a testator an intention to raise an election when, on the face of the will or other instrument, there is a conspicuous omission of language to indicate such an intention, and which, if used, would have removed the doubt which the omission created. This existing doubt must be resolved in favor of the donee, for the law does not impose upon him the responsibility of proving the necessity of making an election. The intention must clearly appear from the document itself, and unless its language unequivocally shows a purpose to dispose of the property belonging to the donee the law will not presume an intention to do so.

It is entirely free from doubt that all of Mrs. Snyder's Holly Point property belonged to Wilson at the time of her death, neither party having terminated the contract of August 30, 1934. Both parties had the right to can-

cel it at any time and this was, of course, known to Mrs. Snyder at the time she made her first codicil (February, 1941) devising to Wilson a portion, only, of the Holly Point property, and not mentioning at all the other portion. Being a lady of intelligence and with a mind of her own, and having, also, the benefit all those years of the advice and guidance of her personal attorney, an experienced counsellor at law, she must have known when she executed her various wills and codicils that she was bound under the contract to devise all of the Holly Point property to Wilson unless she or he cancelled it prior to her death, which both parties had the right to do at any time. Notwithstanding this knowledge with which she was charged, she did not, in fact, cancel the contract but left its benefits open to Wilson, while at the same time continuing in all of her documents the annuity she had originally provided for him. Finally, less than a month before her death, she reinstated the devise of a portion of Holly Point in the precise terms of her codicil of February, 1941, and still without specifically devising to anyone the other portion of said property.

Under these circumstances, we must conclude that the intention of the testatrix to raise an election is not clear and manifest on the face of the testamentary documents before us. This requirement being the basis of the rule of interpretation in such cases, it follows that the chancellor's decree, applying the doctrine of election, must be reversed.

*Decree reversed, with costs.*