## LEDINGHAM *v.* BAYLESS

[No. 22, September Term, 1958.]

*Decided October 28, 1958.*

*Motion for modification of opinion filed November 8, 1958, denied November 19, 1958; motion for amplification filed November 8, 1958, granted and opinion amplified November 19, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Nathan Patz,* for appellants, with whom were *E. Thomas*

*W. Stahl* and *Carl W. Bacharach* on the brief for appellants, William Hanna Bayless and others.

*Daniel M. Murray, Jr.,* for appellee.

HAMMOND, J., delivered the opinion of the Court.

Over the attack of the other two children, who are appellants here, the chancellor held valid and effective, as a contract to devise, a written agreement between George E. S. Bayless, Jr., the appellee (usually called "Buddy"), and his parents, that if he would work the farm owned and lived on by the parents, at the death of the survivor he would "be considered the legal owner of one-half undivided interest in the Fairfield Farm."

Mr. and Mrs. George E. S. Bayless, the parents, acquired a two hundred acre farm in Howard County in 1926 as tenants by the entirety. Mr. Bayless farmed the place until 1942, when heart trouble reduced his activities greatly. One son, William, left the farm in 1941. The daughter, Corinne, moved away in 1942. Buddy graduated from high school in 1940 and immediately joined his father in operating the farm. From 1942 on, certainly from 1946 on, when his father became completely inactive physically, Buddy worked the place alone except at harvest time. From the fall of 1949 until their deaths, Mr. or Mrs. Bayless, or both, often discussed with intimate friends and relatives their intention to give, or the fact that they had given, Buddy a contract which would vest in him a half interest in the farm at the death of the survivor of them. The reasons they gave were that they wanted to stay and die on the farm; that the farm did not pay enough to let them hire someone to work it for them; that if Buddy would not remain they would have to get rid of it; that if they were to remain, they would have to offer Buddy an inducement to stay there during their lifetimes; that if Buddy had started when he left high school, he could have had another career; that they intended to be fair to him because he was giving up everything to run the farm for them; and that they felt it was his right that they make the contract with him. It was also shown that at the time the contract was

being discussed, Buddy was contemplating marriage, and that he became engaged several weeks after the contract was entered into. On January 9, 1950, there was executed a writing between Buddy, as tenant, and his parents as owners "providing for the operation of Fairfield Farm as follows", in which it was agreed that (1) the owners were to pay all taxes and repairs, fire insurance, interest and principal payments on the mortgage; (2) the machinery, livestock, tools and feed, plus $250.00, to be provided by the owners, was to be the working capital of the farm; (3) the tenant was to have full and complete control and authority to operate the farm on his own behalf and not as agent of the owners; (4) the profits or losses were to be equally divided. Finally came the crucial clauses which have led to the litigation before us: "In the event of the termination of this contract, the cattle (hogs, sheep, cows, calves, bulls, etc.) shall be divided equally between Owner and Tennent (sic). In the event of the death of both Owners Tennent (sic) shall be considered the legal owner of one-half undivided interest in Fairfield Farm, to having purchased this with his effort.

"This agreement shall be effective for one year from date, automatically renewable unless cancelled by written notice 60 days before any renewall (sic) date."

The agreement was signed, sealed and acknowledged before a notary public by each of the parties. Mr. Bayless died in February 1951, and Mrs. Bayless in December 1954. From the date of the agreement until his mother's death, Buddy looked after the cattle, planted the corn, tilled the fields, milked the cows, fed the sheep, took care of the lambs, did the plowing, the planting, the cultivating and harvesting, with help during the harvest season only. After the signing of the agreement, Buddy worked industriously, the farm was more intensively cultivated than before and there was a steady improvement in the manner and extent of the cultivation. Larger crops were raised and more land was under cultivation. On January 15, 1953, Mrs. Bayless executed a will in which she left a one-half undivided interest in the farm to Buddy (subject only to the right of Corinne to live in half of the dwelling as long as she desired), and gave Corinne and

William the other half interest in equal shares. On November 18, 1954, the day before she went to the hospital and twenty-eight days before she died, Mrs. Bayless executed another will under which she left all her personal effects to her three children in equal shares, devised the farm to a corporate trustee in trust to operate the farm and to pay one-fourth of the net income to William for life, one-fourth to Corinne for life, and one-half to Buddy for life. After the deaths of the first two of said children to die, the trustee was to pay the income the parent would have taken, if living, unto the children of William and Buddy (Corinne has no children). At the death of the survivor of William, Corinne and Buddy, William's children were given one-third of the farm outright and Buddy's children two-thirds. All of the rest and residue of the estate was left to the children in equal shares, William and Buddy taking theirs absolutely, and the share of Corinne being put in trust for life, with remainder to the children and descendants of her brothers.

The lawyer who drew the 1954 will, a nephew of Mrs. Bayless, testified that in his opinion the reason for the provisions of that will was that Mrs. Bayless "had lost all confidence in the thrift and prudence of her children and her children's spouses, and that is the reason she tied it up in trust." Several hours after the execution of the 1954 will, Mrs. Bayless told her sister that she had just made a will and then repeated to her what she had told her a number of times before, that Buddy would automatically get one-half of the farm at her death.

Seven months after his mother died, Buddy filed a bill, to which all in interest were made parties, that recited many of the matters we have set forth, that the 1954 will had been admitted to probate in Howard County, that the corporate trustee had renounced, that "by the operation and effect of said agreement dated January 9, 1950, he is now seized and possessed of a one-half undivided interest in and to said Fairfield Farm, which he further avers is not susceptible to partition without serious loss and injury to the parties entitled in interest therein", and prayed that a substituted trustee be appointed, that a decree be passed declaring him to be en-

titled to a one-half undivided interest in Fairfield Farm, and that the said farm be sold. Judge Macgill appointed the substituted trustee and then sustained the demurrers the appellants had filed on the ground that the agreement of January 9, 1950, could not be valid unless considered a contract to devise an interest in the farm, and that the bill of complaint was not framed on that theory. Thereupon, Buddy filed an amended bill of complaint, alleging that "said agreement constitutes a contract to devise a one-half interest in and to said farm to him and that said agreement is fair and equitable and supported by sufficient consideration as hereinbefore shown", and praying the same relief as the original bill except that he asked that a trustee be appointed to convey unto him the interest claimed. The demurrers filed to the amended bill were overruled by Judge Macgill. Thereupon, Corinne moved that Buddy be required to elect in advance of the hearing whether to continue his action or to renounce his interest under the 1954 will. After hearing and considering this motion, Judge Macgill held that the necessity for election, if it existed at all, did not arise until it became established whether Buddy had the rights claimed under the agreement of January 9, 1950. The case then came to trial and Judge Boylan found that "the agreement was duly entered into, its terms were understood by all of the parties, there was full compliance by George E. S. Bayless, Jr., and he is entitled to a one-half undivided interest in and to the property known as Fairfield Farm", and passed a decree to that effect and for the sale of the property, from which the appeal was taken.

The appellants make two principal arguments: first, that the disputed contract was an ineffective testamentary disposition and not a contract to devise; they find support for this contention in the absence in terms of an undertaking to make a will, in the cancellation provisions, and in the failure of Buddy to allege in his original bill of complaint that the writing was a contract to devise. The second contention is that if it be assumed that the writing constituted a contract to devise, it was not the kind of a contract that the court should specifically enforce. This they say is because it was not shown that the contract was fair and reasonable and founded

upon a proper consideration, and because Buddy did not carry out faithfully his obligations under the contract.

We find none of the appellants' arguments tenable. We do not have a case, like so many of this sort, where the claim is under an oral contract which the court must scrutinize with the utmost care to determine if there was an agreement and, if so, the precise terms and provisions agreed to. The contract before us is in writing and is clear and specific as to the rights and obligations of each of the contracting parties. There can be no real doubt that the parties intended their undertakings to be contractual. There was consideration on each side. If Buddy worked the farm so that his parents could live out their days there, he was to receive a one-half interest in the farm outright. That the promise of title to the farm was contractual and binding, and not gratuitous, or as a matter of grace, is clearly indicated by the language of the writing that if the contract was in effect at the death of the last of the parents, Buddy was to be considered the "legal owner" of one-half of Fairfield Farm "having *purchased* this with his effort."

Leaving aside the question of whether such a contract should be specifically enforced, there would seem to be no reason to treat a contract to make a will as governed by principles different in any way from those applied to contracts in general, and most courts take this view. As in other contracts, the parties may agree on the surrender or acquisition of any legal rights as consideration, and the adequacy of such consideration is material only as an element of fraud or undue influence or as one of the factors which a court will take into consideration in determining whether or not to grant specific performance. An agreement to render services which the promisee is not bound to render, independent of the contract, is a sufficient consideration. Page, *Wills, Lifetime Edition,* Sec. 1712. *Hanson v. Urner,* 206 Md. 324, 335. See cases cited in annotation in 69 A. L. R. 14; *Eastman v. Eastman* (Me.), 104 A. 1; *Earnhardt v. Clement* (N. C.), 49 S. E. 49.

The authorities make it plain that if there is a contractual obligation under which property is to pass at the death of the

promisor, a contract to bequeath or devise will be implied, although there is no express undertaking by the promisor to execute a will. A promise that the promisee shall receive the property, or that it shall be his at the death of the promisor, is sufficient and it is not necessary that the means by which title is to pass shall be spelled out. Page, *op. cit.,* Sec. 1710; 94 C. J. S., Wills, pp. 863, 865-866. The cases support the textwriters.[1]

The appellants cite no authority for, and we find no merit in, their argument that the yearly option on each side to cancel the contract rendered the consideration illusory and destroyed the effectiveness of the writing as a contract, or that a contract containing such a provision should not be enforced specifically. *Tyler v. Capitol Indemnity Insurance Co.,* 206 Md. 129; *Stamatiades v. Merit Music Service,* 210 Md. 597; *Wilson v. Safe Deposit & Trust Co.,* 183 Md. 245, 253; *Price v. Craig* (Miss.), 143 So. 694, 695. We think no controlling significance can be given to Buddy's failure to spell out in his original bill of complaint that the contract was one to devise. He has never claimed that it was testamentary, alleging in the original bill that by the operation and effect of the contract, he was seized and possessed of a one-half undivided interest in the farm. Actually, this was a fair statement of his legal position, since after his mother's death he was entitled to an equitable interest, to be made a legal interest by a transfer of the legal title by those holding in trust for him. He is not to be penalized because, in response to the suggestion of

---

1. *Teske v. Dittberner* (Neb.), 98 N. W. 57 (There, at death of the promisor, Teske "was to have" the home place); *Stockard v. Warren* (N. C.), 95 S. E. 579 (If a promisee would come and take care of the farm and stock, at death of promisor and his wife, "all of the stock and 200 acres of land on home place will be yours to have and to hold forever in fee simple"); *Lemire v. Haley* (N. H.), 19 A. 2d 436, 438 (If promisee would perform services for promisor, she would not be sorry "for some day everything I have will be yours when I'm gone"); *Velikanje v. Dickman* (Wash.), 168 P. 465, 469; *Howe v. Benedict* (Mich.), 142 N. W. 768; *Taylor v. Cathey* (Ala.), 100 So. 834; *Manchester v. Loomis* (Iowa), 181 N. W. 415; *Ga Nun v. Palmer* (N. Y.), 111 N. E. 223.

Judge Macgill, he filed an amended bill wherein he detailed the mechanics by which he took equitable title and requested transfer of legal title.

We turn to consideration of appellants' second argument— that specific performance should have been denied. Where a promisor in an agreement to devise property has failed to meet his obligation, in whole or in part, the promisee will be given equitable relief if the contract is fair and reasonable and founded upon sufficient consideration and the parties cannot be restored to their original position. Equity grants relief in the nature of specific performance, holding the heirs, devisees, next of kin and personal representatives of the promisor to be trustees holding legal title to the property for the benefit of the promisee. *Hanson v. Urner, supra,* 206 Md. 324, 332, and cases cited therein. We think the chancellor committed no error in decreeing the equivalent of specific performance of the contract under consideration. Buddy fully and adequately performed all of the major undertakings he had agreed to perform. There is no suggestion of fraud, undue influence or overreaching in the case. The parties on each side, who were competent and entitled to do so, put their own estimate on the value of the considerations to be given and received, and we find nothing unfair or unreasonable in the contract. Buddy rendered services to his parents which they felt to be highly desirable and beneficial to them and otherwise unobtainable by them and which, consequently, were to them peculiar, if not unique, and not susceptible of appraisement by ordinary monetary standards. Even in an oral contract to devise land, such services support the jurisdiction and propriety of equity in acting to protect the promisee. *Hanson v. Urner, supra; Mannix v. Baumgardner,* 184 Md. 600; *Neal v. Hamilton,* 159 Md. 447. In *Stamatiades v. Merit Music Service, supra,* 210 Md. 597, 606, the court pointed out and acted on the general Maryland rule—supported by many cases therein referred to—that where a contract involving the rendition of personal services on one side has been performed by the party agreeing to render such services, specific performance may be granted at the suit of the party who has performed the agreed services.

The appellants seek to make much of the fact that the provision of the agreement as to accounting and the division of profits and losses was not lived up to precisely as provided for therein. Whatever was done in this regard clearly would seem to have been done by agreement of the parties and there is no suggestion that either of Buddy's parents ever considered any deviation from the terms of the agreement a breach of the contract. If a promisee fails to perform all of his covenants in a contract to devise, but the promisor does not elect to treat his nonperformance as a breach, the heirs and next of kin of the promisor will not be permitted to set up a breach. Page, *op. cit.,* Sec. 1725; *Burdine v. Burdine's Executor* (Va.), 36 S. E. 992; *Kelley v. Devin* (Ore.), 132 P. 535; *Tuttle v. Winchell* (Neb.), 178 N. W. 755; *Smith v. Cameron* (Kan.), 141 P. 596.

Appellants suggest that when Mrs. Bayless left Buddy a life interest in one-half of the farm with remainder in two-thirds to his children, she fully performed her contractual obligation. We cannot agree. Under the contract Buddy was entitled to become the legal owner as purchaser. Nothing less than a fee simple title to one-half of the farm would seem equal to what he contracted for. A number of courts have held that a devise of a life estate, where a fee has been promised, does not comply with a contractual obligation to devise. *Parrott v. Graves* (Ky.), 32 S. W. 605; *Phalen v. U. S. Trust Co.* (N. Y.), 78 N. E. 943; *Earnhardt v. Clement* (N. C.), 49 S. E. 49; *Eastman v. Eastman* (Me.), 104 A. 1; *Howe v. Benedict* (Mich.), 142 N. W. 768 (last three cited above).

Two subsidiary questions remain—that as to costs of administration and taxes and that as to election. The decree appealed from did not require the half interest of the appellee in the farm to share its proportion of the cost of administration and taxes. The appellee conceded in this Court that his interest would be so liable. See *Day v. Washburn* (N. H.), 81 A. 474, 475. We express no opinion as to whether Buddy's share will be subject to Maryland inheritance tax. *Register of Wills v. Blackway,* 217 Md. 1.

Appellants say the lower court erred in holding that Buddy

was not required to elect between his rights under the 1954 will and the contract. We think there was no error in the denial of the appellants' motion to require an election, at least until his rights under the contract had been settled, and now that Buddy has finally prevailed in his assertion of those rights, no election is required. The will of the testatrix, assuming it to stand as a valid testamentary disposition (we were told at the argument that a caveat had been filed to the 1954 will and was pending), does not indicate an intention that an election was to be required. We see nothing to distinguish the situation before us from that in *Wilson v. Safe Deposit & Trust Co.*, above referred to, where the Court found that no election was required. Under the decision we have reached, Buddy will take a one-half share of the farm outright, rather than for life. The share he takes was not bequeathed to anyone else. He was merely given a lesser interest in that share than called for by the contract, which was the situation in the *Wilson* case. His brother and sister retain their equitable life interests in the other half share; and Buddy has no interest in that half, although his children take a two-thirds interest therein, according to and on the terms of the will of their grandmother. We think that the one-third share of the personalty and the rest and residue, which his mother gave him in the 1954 will, were not intended to be in lieu of any rights that he had or that she intended to give him in the farm.

The case will be remanded for the passage of a decree like that appealed from, modified to call for a proportionate sharing of costs and expenses by the interest of the appellee.

> *Decree affirmed in part and reversed in part, and case remanded for the entry of a decree not inconsistent with the provisions herein, costs to be paid by the appellants.*